# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| GIGAMON INC., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2:19-cv-300-JRG |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| APCON, INC., | ) ███████████ |
| | ) |
| Defendant. | ) |
| | ) |

## APCON'S RESPONSE TO GIGAMON'S MOTION FOR SUMMARY JUDGMENT OF NO TORTIOUS INTERFERENCE

# TABLE OF CONTENTS

I.   Introduction ................................................................................................................. 1

II.  Response to the Statement of Issues to Be Decided by the Court ............................... 2

III. Response to Gigamon's Statement of Undisputed Material Facts ............................... 2

IV.  Apcon's Statement of Additional Undisputed Material Facts ..................................... 7

V.   Legal Standard ............................................................................................................ 9

VI.  Argument ................................................................................................................... 10

    A.   Apcon's Tortious Interference Claim Is Not Preempted by Federal Law ............ 10

        1.   Pleading Sham Litigation Avoids Preemption .......................................... 10

        2.   A Tortious Interference Claim Can Be Based on Sham Litigation .......... 11

        3.   Gigamon Withheld Discovery Showing Its Suit Is Objectively Baseless ................................................................................................... 13

        4.   If the Court Reaches the Issue, Whether Gigamon's Lawsuit Is Objectively Baseless Is a Fact Issue for the Jury ..................................... 16

    B.   Gigamon Tortiously Interfered with Apcon's Prospective Business Relationships ....................................................................................................... 17

        1.   There Is a Reasonable Probability That Apcon Would Have Entered Into a Deal but for Gigamon Filing This Lawsuit ..................................... 18

        2.   Gigamon Acted with a Conscious Desire to Prevent Apcon from Entering into a Deal or Knew Interference Was Certain or Substantially Certain to Occur As a Result of Filing This Lawsuit .......... 20

        3.   Gigamon's Interference Proximately Cause Apcon Injury and Apcon Suffered Actual Damage As a Result ........................................... 21

VII. Conclusion ................................................................................................................. 22

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AMS Sensors USA Inc. v. Renesas Electronics America Inc.*,
No. 4:08-cv-00451, 2020 WL 4431931 (E.D. Tex. July 31, 2020)..........................................19

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................................10

*BHL Boresight, Inc. v. Geo-Steering Sols.*,
No. 4:15-CV-00627, 2016 WL 8648927 (S.D. Tex. Mar. 29, 2016), *modified*,
2017 WL 1177966 (S.D. Tex. Mar. 29, 2017)................................................................1, 12, 13

*Boyte v. Lionhead Holdings*,
No. 3:10-cv-1467, 2011 WL 197589 (N.D. Tex. Jan. 19, 2011)..............................................12

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
157 F.3d 1340 (Fed. Cir. 1998).................................................................................................12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................................................................................................................9

*Coinmach Corp. v. Aspenwood Apartment Corp.*,
417 S.W.3d 909 (Tex. 2013)...............................................................................................11, 18

*Culwell v. City of Fort Worth*,
468 F.3d 868 (5th Cir. 2006) ....................................................................................................10

*Emerald City Mgmt., LLC v. Kahn*,
No. 4:14-cv-358, 2016 WL 98751 (E.D. Tex. Jan. 8, 2016) ....................................................21

*Energy Heating, LLC v. Heat On-The-Fly, LLC*,
889 F.3d 1291 (Fed. Cir. 2018).......................................................................................1, 11, 14

*In re Flonase Antitrust Litig.*,
795 F. Supp. 2d 300 (E.D. Pa. 2011) ........................................................................................16

*Flywheel Fitness, LLC v. Flywheel Sports, Inc.*,
No. 4:13-CV-48, 2013 WL 12138589 (E.D. Tex. July 18, 2013) .............................................12

*Friends of the Earth v. Phibro Energy, Inc.*,
No. 95-20335, 1996 WL 254968 (5th Cir. Apr. 18, 1996)..................................................14, 16

*Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*,
786 F.3d 400 (5th Cir. 2015) ....................................................................................................20

*Globetrotter Software, Inc. v. Elan Comp. Grp., Inc.*,
362 F.3d 1367 (Fed. Cir. 2004)......................................................................................11, 14, 15

*Hill v. Heritage Resources, Inc.*,
   964 S.W.2d 89 (Tex. App. 1997)......................................................................................20

*Indep. Taxicab Drivers' Emps. v. Greater Hous. Transp. Co.*,
   760 F.2d 607 (5th Cir. 1985) ..........................................................................................16

*Int'l Shortstop, Inc. v. Rally's Inc.*,
   939 F.2d 1257 (5th Cir. 1991) .................................................................................. *passim*

*Kamel v. Ave. Insights & Analytics LLC*,
   No. 6:18-cv-422, 2020 WL 4679574 (E.D. Tex. May 5, 2020) .......................................12, 13

*Leonardo Worldwide Corp. v. Pegasus Sols., Inc.*,
   No. 3:14-CV-02660-N, 2016 WL 9282409 (N.D. Tex. July 28, 2016); ...........................18, 20

*Merritt v. State*,
   No. 05-10-01008, 2012 WL 1004734 (Tex. App. Mar. 27, 2012) .........................................12

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
   165 F.3d 891 (Fed. Cir. 1998).............................................................................................11

*Millionway Int'l, Inc. v. Black Rapid, Inc.*,
   No. H-13-1780, 2013 WL 6230366 (S.D. Tex. Dec. 2, 2013), *aff'd*, 585 F.
   App'x 1011 (Fed. Cir. 2014)..................................................................................................13

*Mitsubishi Heavy Indus., Ltd. v. Gen. Co.*,
   720 F. Supp. 2d 1061 (W.D. Ark. 2010)...............................................................................17

*Morris v. Unitedhealthcare Ins. Co.*
   No. 4:15-CV-00638, 2016 WL 7115973 (E.D. Tex. Nov. 9, 2016)..................................2, 15

*Nguyen v. Excel Corp.*,
   197 F.3d 200 (5th Cir. 1999) ...............................................................................................15

*Ni-Q, LLC v. Prolacta Bioscience, Inc.*,
   No. 3:17-CV-000934, 2019 WL 637703 (D. Or. Feb. 14, 2019) ...............................15, 16, 17

*Orchestratehr, Inc. v. Trombetta*,
   No. 3:13-CV-2110, 2016 WL 4563348 (N.D. Tex. Sept. 1, 2016) ........................................19

*OrthoAccel Techs., Inc. v. Propel Orthodontics, LLC*,
   No. 4:16-cv-00350, 2017 WL 1378565 (E.D. Tex. Apr. 11, 2017) ..................................13, 16

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993)..................................................................................................11, 12, 15, 16

*Rail Scale, Inc. v. Balanced Railscale Certification, LLC*,
   No. 2:15-CV-02117, 2017 WL 319078 (E.D. Tex. Jan. 23, 2017) ..................................18, 21

iii

*Strategic Capital Corp. v. New Strong Grp. Ltd.*,
No. 4:08-CV-1651, 2012 WL 6202182 (S.D. Tex. Dec. 12, 2012)..........................................12

*Suncoast Post-Tension, Ltd. v. Scoppa*,
No. 4:13-CV-3125, 2015 WL 12762260 (S.D. Tex. Sept. 2, 2015).......................................19

*Tex. Beef Cattle Co. v. Green*,
883 S.W.2d 415 (Tex. App. 1994), *rev'd on other grounds*, 921 S.W.2d 203
(Tex. 1996).........................................................................................................................22

*Thomas v. Great Atl. & Pac. Tea Co.*,
233 F.3d 326 (5th Cir. 2000) ............................................................................................20

*Va. Panel Corp. v. MAC Panel Co.*,
133 F.3d 860 (Fed. Cir. 1997)...........................................................................................13

*Wal-Mart Stores, Inc. v. Sturges*,
52 S.W.3d 711 (Tex. 2001)................................................................................................12

*Wichita Falls Office Assoc. v. Banc One Corp.*,
978 F.2d 915 (5th Cir. 1992) ..................................................................................13, 14, 16

*Willy v. Admin. Review Bd.*,
423 F.3d 483 (5th Cir. 2005) .............................................................................................15

**Rules**

Fed. R. Civ. P. 11.......................................................................................................................12

Fed. R. Civ. P. 30.......................................................................................................................14

Fed. R. Civ. P. 56...................................................................................................... *passim*

Rule 56(d) ................................................................................................................................13

*All emphasis added unless stated otherwise.

## I.    Introduction

In 2019, Apcon hired an investment bank (Cascadia Capital) to seek investors in a potential sale of the company. Apcon thought ███████████████████████ but, not wanting to alert a competitor that it was up for sale, Apcon had Cascadia reach out to Evergreen Coast Capital ("Evergreen") about the opportunity. Even though Gigamon has known of Apcon and its products for years, only after learning that Apcon was seeking investors did Evergreen and Gigamon devise a plan to bring a patent infringement lawsuit against Apcon, scaring off buyers. Now, Gigamon has moved for summary judgment on Apcon's tortious interference claim, which relies on misstatements of law, would require the Court to resolve factual disputes, and is premature due to Gigamon's failure to produce relevant information. Gigamon's motion should be denied.

Gigamon first argues that Apcon's claim is preempted by federal law and that sham litigation does not suffice to meet the independently tortious or unlawful act requirement. Gigamon is wrong on both counts. A state law tortious interference claim premised on filing a patent infringement lawsuit is not preempted by federal law, so long as that lawsuit was brought in bad faith. *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1304 (Fed. Cir. 2018). And the law is clear: "[w]rongful litigation may be used as the basis for a tortious interference claim" under Texas law. *BHL Boresight, Inc. v. Geo-Steering Sols.*, No. 4:15-CV-00627, 2016 WL 8648927, at *11 (S.D. Tex. Mar. 29, 2016), *modified*, 2017 WL 1177966 (S.D. Tex. Mar. 29, 2017). While Gigamon claims it brought this lawsuit in good faith, that is a disputed factual issue. Not only has Gigamon dropped over 90% of the patent claims it originally asserted against Apcon, but it has withheld discovery that would further establish that its claims are objectively baseless. Specifically, despite Apcon's diligent efforts, Gigamon has withheld discovery subject to pending motions to compel (1) on the first sales of products that practice the Patents-in-Suit, and (2) the ████████████. Gigamon's failure to produce the ███████████ (which it claims to be

1

privileged despite its ▮▮▮▮ testimony to the contrary) is particularly problematic because Gigamon relies on the ▮▮▮▮▮▮ in its motion despite refusing to produce it. It is black letter law that privilege cannot be used as a sword and a shield. Gigamon's reliance on the ▮▮▮▮ ▮▮▮▮ in its motion waives any privilege that existed, and because Gigamon has to-date withheld that analysis, it cannot be considered on summary judgment. *See Morris v. Unitedhealthcare Ins. Co.* No. 4:15-CV-00638, 2016 WL 7115973, at *3 (E.D. Tex. Nov. 9, 2016).

Gigamon's remaining arguments dispute facts related to the remaining elements of Apcon's tortious interference claim, underscoring why summary judgment should be denied. Gigamon argues Apcon has not identified a third party it would have entered into a business relationship with but for the lawsuit, cannot show that Gigamon brought this lawsuit to interfere with any business relationship, and Apcon has not suffered any damages. But Apcon identified ▮▮▮ buyers that were serious about investing in Apcon and ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮. These buyers backed out *because of* the lawsuit. And Gigamon brought this lawsuit only after it found out investors were interested in Apcon. This has also harmed Apcon by forcing it to divert time and resources to defending this lawsuit. For these reasons, as explained in more detail below, Gigamon's motion should be denied or deferred.

## II. Response to the Statement of Issues to Be Decided by the Court

Apcon's tortious interference claim is not preempted because Gigamon brought this lawsuit in bad faith, and as a result, Apcon has plead the required tortious act. While Gigamon may dispute that the evidence is sufficient to show tortious interference with prospective business relationships under Texas law, that dispute is a fact dispute for the jury to resolve.

## III. Response to Gigamon's Statement of Undisputed Material Facts

1. Undisputed with the clarification that Apcon was interested in ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ Dkt. 164, Ex. B at 22:24–23:2.

2.      Undisputed.

3.      Disputed. Cascadia provided Apcon with a ███████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████. Dkt. 164, Ex. E, Ex. C at 142:2–8.

4.      Undisputed.

5.      Undisputed with the clarification that Richard Rauch is Apcon's President and CEO. Ex. 1 at 8:9–10.

6.      Disputed. Cascadia ████████████████████████████████

██████████████████████. Dkt. 164, Ex. C at 142:2–8, 151:21–152:5.

7.      Disputed. Cascadia reached out to Evergreen on July 9, 2019. Dkt. 164, Ex. H. While Apcon is not written on the teaser, it describes Apcon's business and it was apparent that the teaser was describing Apcon. Dkt. 164, Ex. D, Ex. C at 128:2–129:2; Ex. 2 at 39:23–40:2, 41:24–42:16; Ex. 3 at 202:12–19; Ex. 4 at 176:14–178:10; Exs. 5 & 6. Cascadia did not attach the teaser to its initial email to Evergreen, but sent it later that same day. Dkt. 164, Ex. H.

8.      Undisputed that Apcon would not send a Confidential Information Memorandum ("CIM") to a potential buyer without a signed non-disclosure agreement ("NDA"). Disputed that Cascadia did not disclose that Project Citation was Apcon. Cascadia's initial email and the teaser made clear that Project Citation was Apcon. Dkt. 164, Ex. C at 128:2–129:2; Ex. 2 at 39:23–40:2, 41:24–42:16; Ex. 3 at 202:12–19. Evergreen guessed it was Apcon within an hour and a half of receiving the teaser, Ex. 4 at 176:14–178:10; Exs. 5 & 6, and "asked [Cascadia] point blank if this was Apcon," Ex. 2 at 41:24–42:16; *see* Ex. 3 at 202:12–19. Subsequent correspondence with Evergreen and a draft NDA also mentioned Apcon by name. Dkt. 164, Ex. J, Ex. K at 1.

9.      Undisputed as to the first two sentences. Disputed as to the rest. Cascadia asked

3

Evergreen in its initial email and during the introductory call to "not share information [about Project Citation] with Gigamon," and they agreed. Ex. 2 at 47:11–25; Dkt. 164, Ex. H at Cascadia_0017701; *see* Ex. 3 at 199:23–200:19.

10.    Disputed to the extent Gigamon is suggesting that Evergreen did not know Project Citation was Apcon until July 17, 2019. *See* Section III, ¶ 8, *supra*.

11.    Undisputed.

12.    Undisputed.

13.    Disputed. ████████████████████████████

████████████████████████████████████████

████████████████ Ex. 7 at 195:3–10, 195:21–196:7, 197:13–17. ████████

████████████████████ Ex. 7 at 217:9–218:7, 242:16–243:13; Dkt. 127 at 4.

14.    Disputed. Gigamon has not produced the "███████████████████" that purports to be attached to Exhibit P based on an improper assertion of privilege. Dkt. 127 at 1, 3.

15.    Disputed. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

██████████████ Dkt. 164, Ex. I at 231:11–232:4.

16.    Disputed. ████████████████████████████

████████████████████████████ Dkt. 164, Ex. Q at 294:21–25.

████████████████████ *Id.* at 295:5–20. ████████

████████████████████████████████████████

████████████████████████████████ Ex. 8 at

69:1–6; Ex. 7 at 243:14–244:7, 245:21–246:5. Gigamon has improperly withheld documents related to the timing of its decision to file suit on the basis of privilege. *See* Dkt. 127.

17.    Undisputed with the clarification that the deadline to submit indications of interest ("IOI") was not until August 16, 2019. Ex. 9.

18.    Undisputed.

19.    Undisputed as to the quote from the ██████ IOI. Disputed as to the rest. Cascadia testified that an IOI typically ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████ Dkt. 164, Ex. B at 49:16–21, 50:21–52:3. Mr. Rauch testified that an IOI ██████

███████████████████████████████████████████████

████████████ Dkt. 164, Ex. C at 150:16–23. The ███████████████████████ IOIs included a valuation of Apcon, transaction structure, and financing terms; identified due diligence items remaining; and listed the anticipated timing for closing. Dkt. 164, Exs. S, T, V.

20.    Undisputed with the clarification that Apcon has two pending motions to compel discovery (Dkt. 127, 134) and the Court granted the parties' joint motions to take certain third party and expert depositions out of time (Dkt. 156, 158).

21.    Undisputed ████████████████████████████████ ████, and that LOIs are typically submitted after such presentations. Undisputed that Mr. Rauch testified an LOI is ████████████████ with the clarification that he further testified that ████

███████████████████████████████████████████████

████████████████ Dkt. 164, Ex. C at 151:6–10. Disputed that ████████████████

███████████████████████████████████████████████

███████████████████████████. Dkt. 164, Ex. B at 65:19–66:14.

22.    Disputed. ████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

23.    Disputed. ████████████████████████████████████████

███████████████████████████████████████████████████████.

24.    Disputed to the extent Gigamon is suggesting these companies did not care about the lawsuit. They wanted to know the status of the litigation. Dkt. 164, Ex. C at 175:12–24.

25.    Undisputed that ███████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████. *See* Section III, ¶ 28, *infra*.

26.    Undisputed.

27.    Undisputed.

28.    Undisputed that ███████████████████████████████████

███████████████████████████████████ Dkt. 164, Ex. X at 112:1–7. Disputed as to the

rest. ██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

*Id.* at 127:13–128:2; *see* Ex. 3 at 118:2–16, 122:12–17.

29.    Undisputed that ███████████████████████████████████

███████████████████████████████████. Disputed as to the rest. ████████

█████████████████████████████████████████████████████████

████████████ Dkt. 164, Ex. W at 56:20–57:5; Ex. 11 at 55:7–21; Ex. 15 at 93:16–23.

30.    Disputed. ████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████.

## IV.    Apcon's Statement of Additional Undisputed Material Facts

1.    Gigamon knew about Apcon and its products for several years before this lawsuit. Ex. 7 at 265:1–5; Ex. 17 at 40:20–22, 166:13–25; Ex. 18 at 30:24–31:12, 31:19–32:15. Before 2019, Gigamon had not ██████████████████████████████████

█████████████████████████████████████████████████████████

Ex. 7 at 182:11–24, 188:4–8, 190:8–18; *see* Ex. 17 at 168:4–169:5, 205:7–11.

2.    ████████████████████████████████████████████████

███████████ Ex. 7 at 291:13–20. In December 2017, Elliott acquired Gigamon. *Id.* at 119:19–25. Evergreen is the private equity arm of Elliott. *Id.* at 114:8–12.

3.    Gigamon viewed "current or potential competitors" being "acquired by third parties that have greater resources available" as something that "may adversely impact [its] business" because those competitors "might take advantage of the greater resources of the larger organization to compete more aggressively against" Gigamon. Ex. 19 at 37–38.

4.    Cascadia (an investment bank) represents companies for sale. Ex. 11 at 16:10–18.

5.    In 2019, Apcon and Cascadia identified ███████████████████████ ███████. Dkt. 164, Ex. F. Cascadia reached out to Evergreen, ██████████████, with the opportunity because Apcon ████████████████████████████████ ███████████ Ex. 3 at 198:16–199:10; *see* Ex. 2 at 35:18–36:1. During the initial phone call with Evergreen, ████████████████████████████████████████████ *Id.* at 54:5–14. ██████████████████████████████    *Id.*

6.    Evergreen purportedly ██████████████████████████████, ████████ ███████████████████████████ Ex. 4 at 152:1–19, 153:13–25. After Evergreen received Cascadia's July 9, 2019 email about Project Citation, Evergreen reached out to ████████ █████████████████████████████Exs. 20–21. ████████████████████ ██████████████████████████████ Ex. 22. At this point, Evergreen and Elliott ████████████████████████████████████ ████████████████████████. Ex. 4 at 226:7–22, 227:21–228:5. Evergreen did not believe they were under an obligation to keep confidential that Apcon was for sale. *Id.* at 232:10–233:11.

7.    Cascadia was surprised not to hear back from Evergreen ███████████ ██████████████████████████████. Ex. 2 at 47:4–16.

8.    ██████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

9.    After submitting IOIs, ██████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

8

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

10.    Before the lawsuit was filed, Cascadia ████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████

11.    ████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████

12.    ████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████

## V.    Legal Standard

Summary judgment is only proper if the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Apcon "need not offer all of the evidence tending to support its case, only enough evidence 'from which a jury might return a verdict in [its] favor.'" *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1264 (5th Cir. 1991). Apcon's evidence "is to be believed, and all justifiable inferences are to be drawn in [its]

9

favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

If the non-moving party needs more time to obtain discovery to respond, Rule 56(d) permits the party to "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Where the non-moving party "informs the court that its diligent efforts to obtain evidence from the moving party have been unsuccessful, 'a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course.'"[1] *Int'l Shortstop*, 939 F.2d at 1267; *see Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006) (Rule 56(d) relief is "broadly favored and should be liberally granted.").

## VI. Argument

### A. Apcon's Tortious Interference Claim Is Not Preempted by Federal Law

Apcon's tortious interference claim is not preempted by federal law for four reasons. *First*, Apcon has plead that Gigamon's lawsuit is a sham (i.e., it was brought in bad faith). *Second*, sham litigation can serve as the "independently tortious or unlawful" act for a tortious interference with prospective business relationships claim under Texas law. *Third*, Gigamon's motion is premature because Apcon has two pending motions to compel for discovery relevant to whether Gigamon's lawsuit is "objectively baseless." *Fourth*, whether Gigamon's lawsuit is objectively baseless is a fact issue for the jury.

#### 1. Pleading Sham Litigation Avoids Preemption

Apcon's claim for tortious interference with prospective business relationships is based on Gigamon's filing of sham patent litigation to interfere with a deal between Apcon and CenterGate, Graycliff, or Riverside. While Gigamon's assertion of its patents raises considerations of federal

---

[1] Former Rule 56(f) was renumbered as Rule 56(d) "without substantial change." Fed. R. Civ. P. 56(d) 2010 amend. cmt. (2010).

law, *see Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 896–97 (Fed. Cir. 1998), Apcon's claim is not preempted because Gigamon filed this lawsuit in bad faith.

Gigamon incorrectly suggests that Apcon has to show (1) its tortious interference claim under state law is not preempted and (2) Gigamon brought this lawsuit in bad faith. *See, e.g.*, Dkt. 164 at 10–11. Those are not separate requirements. A state law tortious interference claim "based on enforcing a patent, including for tortious interference, [is] preempted by federal patent laws, **unless** the claimant can show that the patent holder acted in bad faith." *Energy Heating*, 889 F.3d at 1304. Apcon has alleged Gigamon brought this lawsuit in bad faith. Specifically, Apcon alleged Gigamon's lawsuit is "sham litigation," "Gigamon specifically intended to disrupt" a deal between Apcon and buyers, and Gigamon knew its lawsuit "would interfere with APCON's potential investor relationships." Dkt. 59, ¶ 103; *see id.* at ¶¶ 6–28, 102, 104–06. The two-part test for determining whether litigation is a "sham" is the same test used for determining whether a patentee acted in bad faith in asserting its patents, i.e., the suit (1) is objectively baseless and (2) was brought in subjective bad faith. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993); *Globetrotter Software, Inc. v. Elan Comp. Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) ("*Professional Real Estate* applies to state-law claims based on … alleg[ations of] patent infringement."). As explained in Sections VI.A.3–VI.A.4, *infra*, whether Gigamon brought this lawsuit in bad faith is both premature and a fact issue for the jury.

### 2.      A Tortious Interference Claim Can Be Based on Sham Litigation

Apcon has alleged that Gigamon's filing of a sham lawsuit is the tortious act for its claim. Gigamon, however, contends that filing a patent infringement lawsuit cannot satisfy the "independently tortious or unlawful" act requirement. Dkt. 164 at 14. *See Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) (tortious interference with prospective business relationships under Texas law requires "independently tortious or unlawful"

conduct); *see* Section VI.B, *supra*. That is incorrect. "Wrongful litigation may be used as the basis for a tortious interference claim" under Texas law. *BHL*, 2016 WL 8648927, at *11; *see Strategic Capital Corp. v. New Strong Grp. Ltd.*, No. 4:08-CV-1651, 2012 WL 6202182, at *10 (S.D. Tex. Dec. 12, 2012) ("Litigation is a powerful weapon, and when instituted in bad faith for the purpose of causing damage or loss, it is a wrongful method of interference."); *see Int'l Shortstop*, 939 F.2d at 1269–70 (Texas law does not "provide[] for an *un*qualified privilege to file a lawsuit." (emphasis in original.)). Indeed, it is unlawful under antitrust law.

Gigamon also conflates the "independently tortious or unlawful act" requirement with showing an independent cause of action, which is not required for a tortious interference claim. Apcon need not "prove an independent tort" or independent cause of action, only that Gigamon's conduct "would be actionable under a recognized tort" or law.[2] *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001) ("independently tortious [does] not mean that the plaintiff must be able to prove an independent tort"). Apcon meets this requirement because bringing patent litigation in bad faith implicates antitrust violations. *See C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1368 (Fed. Cir. 1998); *cf. Prof'l Real Estate*, 508 U.S. at 56–61.[3] To be sure, ***good***-faith enforcement of patent rights is not independently wrongful or tortious. But ***bad*** faith enforcement

---

[2] The cases Gigamon cites recognize this distinction. *See, e.g.*, *Kamel v. Ave. Insights & Analytics LLC*, No. 6:18-cv-422, 2020 WL 4679574, at *12 (E.D. Tex. May 5, 2020); *BHL*, 2016 WL 8648927, at *11.

[3] The cases Gigamon cites, which state that frivolous litigation or sham litigation is not an independent cause of action, are thus inapposite. *See Flywheel Fitness, LLC v. Flywheel Sports, Inc.*, No. 4:13-CV-48, 2013 WL 12138589, at *4 (E.D. Tex. July 18, 2013) (no cause of action for sham litigation in Texas, but recognizing there are causes of action premised on filing sham litigation); *Merritt v. State*, No. 05-10-01008, 2012 WL 1004734, at *1–2 (Tex. App. Mar. 27, 2012) ("filing a frivolous lawsuit" could not constitute the "unlawful act" for a criminal retaliation charge because there is no "independent tort cause of action for damages for filing a frivolous lawsuit"); *Boyte v. Lionhead Holdings*, No. 3:10-cv-1467, 2011 WL 197589, at *3 (N.D. Tex. Jan. 19, 2011) (dismissing counterclaim for frivolous litigation under Rule 11 because "Rule 11 does not create a cause of action").

is.[4] Apcon's tortious interference claim is based on **bad** faith enforcement of Gigamon's patent rights in an objectively baseless lawsuit. As explained in Section VI.A.4, *infra*, whether Gigamon's lawsuit is objectively baseless, and therefore is sham litigation, is a fact issue.

### 3.    Gigamon Withheld Discovery Showing Its Suit Is Objectively Baseless

Gigamon's motion should be denied or deferred as premature under Rule 56(d) because Gigamon has withheld two key categories of discovery that Apcon has diligently sought to show this lawsuit is objectively baseless. *See Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992) (holding court erred by ruling on summary judgment motion where non-movant properly invoked former Rule 56(f)); *Int'l Shortstop*, 939 F.2d at 1268 (same). Specifically, Gigamon has improperly withheld discovery related to (1) its first sales of products that practice the Patents-in-Suit, which Apcon sought to establish that the '862 and '049 patents are invalid under the on-sale bar; and (2) the ▮▮▮▮▮▮▮▮▮, which Gigamon claims is privileged (despite its ▮▮▮ testimony to the contrary) but relies on in support of its motion. Apcon diligently sought this discovery, which is currently the subject to two pending motions to compel. Dkt. 127, 134. Therefore, a ruling on this motion should be deferred until the Court rules on those pending motions. Ex. 36 (supporting Rule 56(d) declaration). *See OrthoAccel Techs., Inc. v. Propel Orthodontics, LLC*, No. 4:16-cv-00350, 2017 WL 1378565, at *3 (E.D. Tex. Apr. 11, 2017).

A motion for summary judgment should be denied or deferred under Rule 56(d) if the non-movant: (1) "request[s] extended discovery prior to the court's ruling on summary judgment," (2)

---

[4] This is consistent with the cases Gigamon relies on, none of which involved allegations of litigation brought in bad faith. *See Kamel*, 2020 WL 4679574, at *12 (a good faith exercise of a legal right is not wrongful or tortious); *Millionway Int'l, Inc. v. Black Rapid, Inc.*, No. H-13-1780, 2013 WL 6230366, at *4 (S.D. Tex. Dec. 2, 2013) (same), *aff'd*, 585 F. App'x 1011 (Fed. Cir. 2014) (nonprecedential); *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997) (same); *BHL*, 2016 WL 8648927, at *11 (distinguishing between "a bona fide exercise of the defendant's own rights" and "[w]rongful litigation," the latter of which "may be used as the basis for a tortious interference claim").

"put[s] the trial court on notice that further discovery pertaining to the summary judgment motion is being sought," (3) "demonstrate[s] to the trial court specifically how the requested discovery pertains to the pending motion," and (4) the non-movant shows that it diligently pursued the relevant discovery. *Wichita*, 978 F.2d at 919. All four requirements are met here.

*First*, Apcon requested further discovery with respect to the ███████████ and first sales of Gigamon's products well before Gigamon filed its motion for summary judgment by filing motions to compel on August 10, and August 19, 2020, respectively. *See Friends of the Earth v. Phibro Energy, Inc.*, No. 95-20335, 1996 WL 254968, at *2–3 (5th Cir. Apr. 18, 1996) (unpublished) (abuse of discretion to rule on summary judgment motion with pending motion to compel). *Second*, Apcon has put the Court on notice that it is invoking Rule 56(d) and requesting the Court deny or defer ruling on Gigamon's motion until it rules on Apcon's motions to compel by submitting the declaration attached to Apcon's opposition, Ex. 36. *See id.*

*Third*, the discovery requested in Apcon's motions to compel is relevant to Gigamon's motion for summary judgment. In particular, Apcon has moved to compel:

- the ███████████ prepared for Gigamon's Board of Directors, as well as communications and other documents related to the ███████████ or to Apcon and Rule 30(b)(6) testimony on these documents; and

- source code for the GigaSMART product, Rule 30(b)(6) testimony on thousands of pages of documents concerning the early development and sale of products Gigamon contends practice the Patents-in-Suit, and a complete response to Apcon's Interrogatory No. 40 on the first sale and public use of those products.

Dkt. 127 at 1; Dkt. 134 at 1–2. This discovery is directly relevant to whether Gigamon's lawsuit is objectively baseless. The "bad faith" requirement has both an objective and a subjective component. *Energy Heating*, 889 F.3d at 1305. The objective prong requires showing that the infringement allegations are "objectively baseless." *Globetrotter*, 362 F.3d at 1375. Infringement allegations are objectively baseless if "no reasonable litigant could realistically expect success on

14

the merits." *Prof'l Real Estate*, 508 U.S. at 60; *see Globetrotter*, 362 F.3d at 1377.

In its motion, Gigamon argues that "there can be no doubt that this action was reasonably brought to enforce legitimate patent rights." Dkt. 164 at 1. But Gigamon is using its claim of privilege to the ███████████ as a sword (selectively relying on its existence to support Gigamon's narrative of its motives for bringing this lawsuit, *see, e.g.*, *id.* at 1, 4, 13, 15), while simultaneously using it as a shield (withholding the ███████████ and related discovery that would permit Apcon to challenge the legitimacy of this lawsuit). Dkt. 127 at 2–4 & n. 1. This is the very definition of using privilege as a sword and a shield, which results in a "waiver by implication." *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 n.18 (5th Cir. 1999); *see Willy v. Admin. Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005). Because any privilege claim is now waived, Gigamon must therefore produce the ███████████. *See Nguyen*, 197 F.3d at 207 n.18. Moreover, Gigamon cannot rely on that to-date, unproduced analysis in support of its motion. *See Morris*, 2016 WL 7115973, at *3. Gigamon's motion should therefore be denied, or, at a minimum, deferred. *See Int'l Shortstop*, 939 F.2d at 1268 (error to rule on motion where the discovery "sought pertained directly to the privilege issue which" and "might well shed light on whether [defendant's] had a good faith belief … [to] assert[] a colorable claim"). As to the on-sale bar discovery, evidence showing that Gigamon made sales and offers to sell of products practicing the Patents-in-Suit years before Gigamon ever applied for patent protection is relevant to whether Gigamon's lawsuit asserting those patents is objectively baseless. *See Ni-Q, LLC v. Prolacta Bioscience, Inc.*, No. 3:17-CV-000934, 2019 WL 637703, at *6 (D. Or. Feb. 14, 2019) (evidence showing that patentee "first sold or offered for sale a product that fully anticipated the claim limitations" raised a fact issue as to "whether [patentee] enforced its patent in bad faith").

*Fourth*, Apcon has been diligent in seeking this discovery. Apcon requested discovery on

15

Gigamon's pre-suit investigation (if any) and communications Gigamon had with third parties regarding the Patents-in-Suit and Apcon in December 2019, Dkt. 127 at 1–2, and requested discovery on the first sales of Gigamon's products in early July 2020, Dkt. 134 at 1–2. Apcon promptly notified Gigamon when it believed Gigamon was withholding relevant discovery and moved to compel when Gigamon refused to provide the requested discovery. Dkt. 127, 134. *See Friends of the Earth*, 1996 WL 254968, at *3–4; *OrthoAccel*, 2017 WL 1378565, at *3.

"[W]hen a party is seeking discovery that is germane to the pending summary judgment motion it is inequitable to pull out the rug from under them by denying such discovery." *Wichita*, 978 F.2d at 920. Gigamon's motion should therefore be denied or deferred under Rule 56(d) until the Court rules on Apcon's pending motions to compel. *See OrthoAccel*, 2017 WL 1378565, at *3.

### 4. If the Court Reaches the Issue, Whether Gigamon's Lawsuit Is Objectively Baseless Is a Fact Issue for the Jury

Even if the Court reaches the merits of Gigamon's motion, whether Gigamon's patent infringement lawsuit is objectively baseless is an issue of fact for the jury.[5] *See Ni-Q*, 2019 WL 637703, at *3 (issue of fact as to whether patentee's enforcement of its patent was objectively baseless precluded summary judgment); *In re Flonase Antitrust Litig.*, 795 F. Supp. 2d 300, 309, 317 (E.D. Pa. 2011) (same). The question of whether litigation is a sham "is generally a question of fact for the jury …." *Indep. Taxicab Drivers' Emps. v. Greater Hous. Transp. Co.*, 760 F.2d 607, 612 n.9 (5th Cir. 1985). A court should only rule on the objective baselessness prong as a matter of law "[w]here … there is no dispute over the predicate facts of the underlying [litigation]." *Prof'l Real Estate*, 508 U.S. at 63. Here, there is evidence showing that Gigamon's lawsuit is

---

[5] Gigamon has only moved for summary judgment with respect to the objective prong of the two-prong bad faith requirement. To the extent Gigamon's motion can be construed as also moving for summary judgment as to the subjective prong, this is a fact issue. As explained below, there is a fact dispute as to Gigamon's motive in bringing this lawsuit. *See* Section VI.B.2, *infra*.

16

objectively baseless, underscoring the disputed nature of this fact issue.

Gigamon has dropped over 90% of its asserted patent claims (starting with 212, dropping to 65 right before claim construction briefing, and dropping further to 21 days before expert reports were due). Exs. 32–33; Dkt. 60. Of the remaining asserted claims, there are glaring deficiencies in Gigamon's case that show this lawsuit is objectively baseless. For example, Gigamon has attempted to enforce the '862 and '049 patents knowing that it sold products that embodied those patents over a year before their priority dates. Ex. 30, ¶¶ 339–99, 1733–75. This alone raises an issue of fact as to those two patents. *See Ni-Q*, 2019 WL 637703, at *6. Apcon has also submitted expert testimony showing that *all* 21 asserted claims of the Patents-in-Suit are invalid or not infringed, Exs. 30 & 31, and has moved for summary judgment on a subset of those claims, Dkt. 161. Combined with the fact that ***Gigamon's own documents*** recognize that Apcon is not using the Patents-in-Suit, Ex. 31, ¶¶ 196–97, 199, 206, 208, there is a factual dispute regarding whether Gigamon had a reasonable basis to believe that the Patents-in-Suit were valid and infringed by Apcon.[6] Gigamon has not demonstrated, as it must under Rule 56, that the record evidence is so lacking that this Court must conclude, as a matter of law, that Apcon cannot prove that Gigamon's lawsuit is objectively baseless. Therefore, its motion must be denied.

### B. Gigamon Tortiously Interfered with Apcon's Prospective Business Relationships

"Texas law protects prospective contracts and business relations from tortious

---

[6] That Apcon chose not to file a motion to dismiss or Gigamon's claims remain pending does not mean Gigamon's lawsuit is not objectively baseless as a matter of law. *See Mitsubishi Heavy Indus., Ltd. v. Gen. Co.*, 720 F. Supp. 2d 1061, 1067 (W.D. Ark. 2010) (rejecting that the decision not to file a motion to dismiss means the action is not a sham). Nor is it not surprising that Apcon's technical expert or damages expert did not offer opinions on the objective baseless of Gigamon's lawsuit since they offered opinions on whether Apcon's products meet the elements of the patent claims (they do not) and Gigamon's damages claim.

17

interference." *Coinmach*, 417 S.W.3d at 923. Under Texas law, a claim for tortious interference with prospective business relationships has five elements:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Id.* As explained in Section VI.A.2, filing sham litigation satisfies the third element, and as explained below, there are fact issues as to the remaining elements, precluding summary judgment.

### 1. There Is a Reasonable Probability That Apcon Would Have Entered Into a Deal but for Gigamon Filing This Lawsuit

Absent this lawsuit, there was a reasonable probability that Apcon would have entered into a deal with one of the ████ buyers. *See Coinmarch*, 417 S.W.3d at 924. ████████████

████████████████████████████████████████████████████

████████████████████. Section IV, ¶¶ 9–12, *supra*. The only reason these buyers backed out was the lawsuit. Section III, ¶ 22, *supra*. For example, ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████
████████████████

████████████████████████████
████████████████████

Ex. 15 at 42:2–8; *see id.* at 89:4–10. This is more than sufficient to show a "reasonable probability" and raise a fact issue. *See Leonardo Worldwide Corp. v. Pegasus Sols., Inc.*, No. 3:14-CV-02660-N, 2016 WL 9282409, at *6 (N.D. Tex. July 28, 2016); *Rail Scale, Inc. v. Balanced Railscale Certification, LLC*, No. 2:15-CV-02117, 2017 WL 319078, at *3 (E.D. Tex. Jan. 23, 2017).

Gigamon's only response is to dispute these facts, which is fatal to its motion. For example,

18

Gigamon claims that the ▆▆ buyers only got as far as submitting IOIs, had only shown "initial interest," or were at a "preliminary stage." Dkt. 164 at 16–17, 19. Not so. ▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆. *See* Section IV, ¶¶ 9–12, *supra*. In fact, when ▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *See* Section III, ¶ 22, *supra*; Section IV, ¶¶ 9, 10, 12 *supra*. This is far different than the cases Gigamon relies on where the possibility of a contract was too speculative.[7] Further, Gigamon offers no support that ▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Neither Cascadia, nor Apcon, nor any of the buyers testified that each step had to be completed, and each potential buyer dropped out after learning of the lawsuit. Section III, ¶ 22, *supra*.

Gigamon also claims that any sale would have been difficult due to ▆▆▆▆▆▆

▆▆▆▆▆▆ but this is misleading. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆,

---

[7] *See Suncoast Post-Tension, Ltd. v. Scoppa*, No. 4:13-CV-3125, 2015 WL 12762260, at *14 (S.D. Tex. Sept. 2, 2015) (email from customer asking plaintiff to "start submittals" was insufficient to show a "reasonable probability" plaintiff would have received the project); *Orchestratehr, Inc. v. Trombetta*, No. 3:13-CV-2110, 2016 WL 4563348, at *6 (N.D. Tex. Sept. 1, 2016) (plaintiffs did not "point to any entity which it would have entered into a contractual relationship but-for Defendants actions"). Gigamon also cites *AMS Sensors USA Inc. v. Renesas Electronics America Inc.*, No. 4:08-cv-00451, 2020 WL 4431931, at *3–4 (E.D. Tex. July 31, 2020), but that case only stated the elements of a tortious interference claim in passing.

*id.*, further highlighting that a deal was reasonably probable but for this lawsuit. Finally, Gigamon is incorrect that only a contract or firm offer to enter a contract can satisfy the "reasonable probability" element. "It is not necessary to prove that the contract would have certainly been made but for the interference." *Leonardo*, 2016 WL 928240239, at *6. Indeed, the "principal difference" between a claim for tortious interference with **contract** and tortious interference with **prospective** business relationships under Texas law is the former "involves the requirement of a contract," while the later only requires "a **potential** for a contract." *Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 109 (Tex. App. 1997). Gigamon's arguments confirm that disputed issues of fact exist as to this element. *See Leonardo*, 2016 WL 928240239, at *6.

### 2. Gigamon Acted with a Conscious Desire to Prevent Apcon from Entering into a Deal or Knew Interference Was Certain or Substantially Certain to Occur As a Result of Filing This Lawsuit

The second element of a tortious interference claim goes to Gigamon's state of mind. *See Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 417 (5th Cir. 2015). The Fifth Circuit has repeatedly explained that "cases which turn on the moving party's state of mind are not well-suited for summary judgment" because "state of mind is inherently a question of fact which turns on credibility." *Int'l Shortstop*, 939 F.2d at 1265 (collecting cases). Gigamon argues that there is "unrebutted testimony" that ███████████████████████████ ███████████████████████████████████████ Dkt. 164 at 20.

Gigamon's self-serving testimony is not "unrebutted," as Gigamon contends because Apcon has adduced significant circumstantial evidence supporting its claim. *See Thomas v. Great Atl. & Pac. Tea Co.*, 233 F.3d 326, 329–30 (5th Cir. 2000). Evergreen knew Apcon was for sale, and ███████████████████████████████████ Section III, ¶¶ 7–10, 16, *supra*; Section IV, ¶¶ 5, 6, *supra*. It was only after Evergreen learned of Project Citation (the code name for Apcon) and that there was investor interest, that Gigamon sued Apcon. Section III,

20

¶ 16, *supra*; Section IV, ¶¶ 1, 5, 6, *supra*. Based on when Cascadia reach out to Evergreen as part of the initial contacts, Evergreen knew where Apcon was in the sales process. And after letting the ██████████ languish, Evergreen ██████████████ ████████████

████████████████████████████████████████████████████

Section IV, ¶ 6, *supra*. Testimony from ███████████████ also rebuts Gigamon's timeline of events, supporting that ████████████████████████ ███████████████████. Section III, ¶¶ 16, *supra*. Moreover, Gigamon has withheld discovery surrounding Gigamon's decision to bring this lawsuit while using the evidence it hand-selected to produce to support its motion. *See* Section VI.A.3, *supra*. "[I]t is [also] particularly difficult for [Apcon] to challenge th[is] 'self-serving testimony' … without the benefit of … cross-examination," where the jury can observe the witnesses' demeanor and assess their credibility. *Int'l Shortstop*, 939 F.2d at 1265.  A factual dispute therefore exists.

### 3. Gigamon's Interference Proximately Cause Apcon Injury and Apcon Suffered Actual Damage As a Result

The final two elements, proximate cause and actual damage, are related and concern the harm Apcon suffered from Gigamon's interference. *See Emerald City Mgmt., LLC v. Kahn*, No. 4:14-cv-358, 2016 WL 98751, at *22 (E.D. Tex. Jan. 8, 2016) (where defendant "proximately caused injury[,] … [i]t follows that [plaintiff] suffered actual damages"). Both elements raise fact issues for the jury. *See Rail Scale*, 2017 WL 319078, at *3 (denying summary judgment where "reasonable probability" element met, and "it follows that Defendants may have been damaged").

As explained in Section VI.B.1, Gigamon's lawsuit interfered with Apcon finalizing a deal ████████████████████████████. Instead, Apcon has been forced to divert resources and funds to defending this lawsuit, including attorney's fees.[8] Ex. 1 at 236:17–240:5; Exs. 34 & 35.

---

[8] Apcon is not alleging actual damages is the amount it would have received in a deal with

21

*See Tex. Beef Cattle Co. v. Green*, 883 S.W.2d 415, 430 (Tex. App. 1994), *rev'd on other grounds*, 921 S.W.2d 203 (Tex. 1996). Apcon only suffered this injury as a result of Gigamon's interference, and its damages are thus not "entirely speculative," as Gigamon contends.

Gigamon does not address this harm, but nonetheless argues there are three reasons why Gigamon's interference "has not caused Apcon harm." Dkt. 164 at 21. *First*, Gigamon argues that a deal between Apcon the ███ buyers remains a possibility. The very testimony Gigamon cites contradicts this. For example, Gigamon *omits* testimony where ████████████████ ████████████████. Section III, ¶ 23, *supra*. But regardless, no deal has happened and instead, Apcon has been harmed. *Second*, Gigamon argues that "Apcon fails to identify a single third party who would have entered into a business relationship with Apcon" absent the lawsuit, Dkt. 164 at 21, but this relates to the "reasonable probability" element, and there is sufficient evidence that the buyers backed out because of the lawsuit to overcome summary judgment. *See* Section VI.B.1, *supra*. *Third*, Gigamon argues that since Apcon ███████████ ████████████████, there can be no harm. This is a non-sequitur. By the time ████████████████ the harm had already been done. The ███ buyers had backed out, and Apcon had diverted resources to defending this lawsuit. ████████████████ ████████████████████████████████████████. Section III, ¶ 28, *supra*. Drawing all inferences in Apcon's favor, factual questions remain regarding the harm Gigamon's actions caused and the resulting damages.

## VII.   Conclusion

For the foregoing reasons, Apcon respectfully requests that the Court deny Gigamon's Motion for Summary Judgment of No Tortious Interference.

---

CenterGate, Graycliff, or Riverside.

Dated: October 13, 2020

Respectfully submitted,

/s/ *Michael W. De Vries*
Clyde Moody Siebman
Texas State Bar No. 18341600
Elizabeth Siebman Forrest
Texas State Bar No. 24086207
Anna Rebecca Skupin
Texas State Bar No. 24084272
**SIEBMAN FORREST BURG & SMITH LLP**
300 North Travis Street
Sherman, TX 75090-0070
Telephone: (903) 870-0070
Facsimile: (903) 870-0066
clydesiebman@siebman.com
elizabethforrest@siebman.com
beccaskupin@siebman.com

Michael W. De Vries
**KIRKLAND & ELLIS LLP**
555 South Flower Street, Suite 3700
Los Angeles, CA, 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
michael.devries@kirklandcom

Gianni Cutri
Katherine E. Rhoades (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
gianni.cutri@kirkland.com
katherine.rhoades@kirkland.com

Adam Alper (*pro hac vice*)
Akshay Deoras (*pro hac vice*)
Kristen P. L. Reichenbach
Reza Dokhanchy (*pro hac vice*)
Natalie Flechsig (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104

23

Telephone: (415) 439-1400
Facsimile: (415) 4309-1500
adam.alper@kirkland.com
akshay.deoras@kirkland.com
kristen.reichenbach@kirkland.com
reza.dokhanchy@kirkland.com
natalie.flechsig@kirkland.com

Leslie M. Schmidt (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Ave.
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
leslie.schmidt@kirkland.com

Joshua Glucoft (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
2049 Century Park East
Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900
josh.glucoft@kirkland.com

Richard L. Schwartz
Texas State Bar No. 17869500
Enrique Sanchez, Jr.
Texas State Bar No. 24068961
**WHITAKER CHALK SWINDLE &
SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, TX 76102-4135
Telephone: (817) 878-0524
Facsimile: (817) 878-0501
rschwartz@whitakerchalk.com
rsanchez@whitakerchalk.com

*Counsel for Defendant Apcon, Inc.*

24

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via email per Local Rule CV-5(a)(7) on October 13, 2020.

*/s/ Michael W. De Vries*
Michael W. De Vries

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Michael W. De Vries*
Michael W. De Vries

25