**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| GIGAMON INC., | |
| Plaintiff, | Civil Action No. 2:19-cv-300-JRG |
| v. | **JURY TRIAL DEMANDED** |
| APCON, INC., | ████████████ |
| Defendant. | |

## JOINT PRETRIAL ORDER

Plaintiff Gigamon Inc. ("Gigamon") and Defendant Apcon, Inc. ("Apcon") (collectively, the "Parties") submit this Joint Pretrial Order regarding the jury trial for the above-captioned action.  Pursuant to the Court's Eighth Amended Docket Control Order (Dkt. No. 216) and Rule 16 of the Federal Rules of Civil Procedure, a pretrial conference in this matter is scheduled for February 22, 2021 at 9:00 am.  Jury selection will occur on April 5, 2021.

## I.   COUNSEL FOR THE PARTIES

### A.   Attorneys for Plaintiff Gigamon Inc.:

Jonas R. McDavit (*pro hac vice*)
Cosmin Maier (*pro hac vice*)
Steven M. Balcof (*pro hac vice*)
Elizabeth Weyl (*pro hac vice*)
Francesco D. Silletta (*pro hac vice*)
Joze F. Welsh (*pro hac vice*)
Amy I. Wann (*pro hac vice*)
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
Email:  jmcdavit@desmaraisllp.com
Email:  cmaier@desmaraisllp.com
Email:  sbalcof@desmaraisllp.com
Email:  fsilletta@desmaraisllp.com
Email:  jwelsh@desmaraisllp.com
Email:  awann@desmaraisllp.com

Emily H. Chen (CA 302966)
**DESMARAIS LLP**
101 California Street
San Francisco, CA 94111
Telephone: (415) 573-1806
Facsimile: (415) 573-1901
echen@desmaraisllp.com

William E. Davis, III
(TX Bar No.24047416)
**THE DAVIS FIRM P.C.**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661
bdavis@davisfirm.com

### B.   Attorneys for Defendant Apcon, Inc.:

Adam R. Alper (*pro hac vice*)
Akshay S. Deoras (*pro hac vice*)
Kristen P. L. Reichenbach
M. Reza Dokhanchy  (*pro hac vice*)
Natalie K. Flechsig  (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 4309-1500
adam.alper@kirkland.com
akshay.deoras@kirkland.com

Clyde Moody Siebman
Texas State Bar No. 18341600
Elizabeth Siebman Forrest
Texas State Bar No. 24086207
Anna Rebecca Skupin
Texas State Bar No. 24084272
**SIEBMAN FORREST BURG & SMITH LLP**
300 North Travis Street
Sherman, TX 75090-0070
Telephone: (903) 870-0070
Facsimile: (903) 870-0066

kristen.reichenbach@kirkland.com
reza.dokhanchy@kirkland.com
natalie.flechsig@kirkland.com

Michael W. De Vries
**KIRKLAND & ELLIS LLP**
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
michael.devries@kirkland.com

Gianni Cutri
Katherine E. Rhoades (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
gianni.cutri@kirkland.com
katherine.rhoades@kirkland.com

Leslie M. Schmidt (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Ave.
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
leslie.schmidt@kirkland.com

Joshua Glucoft (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900
josh.glucoft@kirkland.com

clydesiebman@siebman.com
elizabethforrest@siebman.com
beccaskupin@siebman.com

Richard L. Schwartz
Texas State Bar No. 17869500
Enrique Sanchez , Jr.
Texas State Bar No. 24068961
**WHITAKER CHALK SWINDLE &
SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, TX 76102-4135
Telephone: (817) 878-0524
Facsimile: (817) 878-0501
rschwartz@whitakerchalk.com
rsanchez@whitakerchalk.com

## II.   STATEMENT OF JURISDICTION

Jurisdiction in this case is based on the United States patent laws, 35 U.S.C. §§ 1, *et seq.*

This Court has jurisdiction over the subject matter of this action under at least 28 U.S.C. §§ 1331

and 1338(a).

Subject-matter jurisdiction, personal jurisdiction, and venue are not disputed in this case.

III.     **NATURE OF ACTION**

A.     **Gigamon's Statement of the Nature of Action**

This is a patent infringement action.  Gigamon filed this patent infringement action on August 30, 2019.  Gigamon seeks damages for Apcon's direct, indirect, and willful infringement of six U.S. Patents under 35 U.S.C. § 271.  The patents-in suit are U.S Patent No. 8,570,862 (the "'862 patent"); U.S. Patent No. 8,824,466 (the "'466 patent"); U.S. Patent No. 8,830,819 (the "'819 patent"); U.S. Patent No. 8,873,557 (the "'557 patent"); U.S. Patent No. 9,077,656 (the "'656 patent"); and U.S. Patent No. 9,769,049 (the "'049 patent") (collectively, the "Asserted Patents").  Taken together, the Asserted Patents cover core technologies that span Apcon's network monitoring equipment offerings.   Apcon has known about the Asserted Patents and its infringement of those patents from Gigamon's filing and service of the Complaint. Despite such knowledge, Apcon continues to infringe the Asserted Patents.   This is an exceptional case, warranting an award of attorneys' fees to Gigamon.

Gigamon seeks damages to compensate it for Apcon's infringement under 35 U.S.C. § 271 of the following claims of the Asserted Patents: claims 1 and 8 of the '862 patent; claims 1 and 12 of the '466 patent; claims 21 and 22 of the '819 patent; claims 9 and 10 of the '557 patent; claims 1 and 14 of the '656 patent; and claim 16 of the '049 patent ("collectively, the "Asserted Claims").

Gigamon seeks damages under 35 U.S.C. § 284 in the form of a reasonable royalty and lost profits, as well as an accounting, pre- and post-judgment interest, and ongoing royalties as appropriate.  Gigamon seeks its fees and costs incurred in connection with this action, as well as judgment that this is an exception case within the meaning of 35 U.S.C. § 285.  Gigamon also seeks treble damages under 35 U.S.C. § 284 for Apcon's willful infringement of the Asserted Patents.  Gigamon also seeks a permanent injunction against Apcon, requiring Apcon to refrain from infringing the Asserted Patents.

3

**B.     Apcon's Statement of the Nature of Action**

Apcon contends that none of the asserted claims is infringed, either directly or indirectly, by Apcon and that there has been no willful infringement.  Apcon contends that each of the asserted claims is invalid as anticipated or obvious by the prior art pursuant to 35 U.S.C. §§ 102 and/or 103.  Apcon denies that Gigamon is entitled to damages and disputes the amount of damages to which Gigamon is entitled if it should establish infringement and the patents are held not invalid.  Apcon further denies that Gigamon is entitled to enhanced damages, injunctive relief, or relief under 35 U.S.C. § 285.

Apcon contends that Gigamon and its affiliates tortiously interfered with Apcon's prospective business relations with multiple investors interested in acquiring Apcon by bringing sham patent litigation against Apcon.

Apcon seeks actual damages in the form of attorneys' fees spent to defend against Gigamon's sham litigation, exemplary damages, a permanent injunction against Gigamon requiring Gigamon and other persons bound by an injunction under Rule 65(d) to refrain from interfering with Apcon relationships with potential investors, and a judgment that this case is an exceptional case pursuant to 35 U.S.C. § 285, entitling Apcon to attorneys' fees, costs, and interest.

## IV.     CONTENTIONS OF THE PARTIES

**A.     Gigamon's Contentions**

Apcon has directly infringed and continues to directly infringe the Asserted Patents under 35 U.S.C. § 271(a) by making, using, selling, or offering for sale the following accused products (the "Accused Products"):

| Patent | Accused Products |
|--------|------------------|
| '862 | Series 4000 Platform; Series 3000 Platform |
| '466 | Series 4000 Platform; Series 3000 Platform |
| '819 | Apcon Bypass Devices, including the Optical Bypass TAP, Bypass Switch Blade, Optical Bypass Switch, IntellaFlex Bypass Switch, Bypass Switch |

|  | TAP/Aggregator, Copper Bypass TAP, Copper Bypass TAP Appliance, and Bypass TAP/Aggregator |
|---|---|
| '557 | Series 3000 Platform |
| '656 | Series 4000 Platform; Series 3000 Platform |
| '049 | Series 4000 Platform; Series 3000 Platform |

Apcon has indirectly infringed since August 30, 2019 and continues to indirectly infringe the Asserted Patents under 35 U.S.C. § 271(b) by inducing infringement of the Asserted Patents by—directly or through intermediaries—supplying the Accused Products to users and instructing such users how to use the Accused Products in their ordinary, customary, and intended way, which implicates use of infringing technology.

Apcon's infringement of the Asserted Patents has been willful since August 30, 2019 and continues to be willful.

The Asserted Claims are valid and enforceable and not barred as a result of any of Apcon's affirmative defenses or counterclaims.

Gigamon seeks damages under 35 U.S.C. § 284 in the amount of lost profits for past sales or a reasonable royalty for past sales, as well as an accounting, pre- and post-judgment interest, and ongoing royalties.  Gigamon also seeks judgment that this is an exceptional case within the meaning of 35 U.S.C. § 285, warranting an award of attorneys' fees to Gigamon.  Gigamon also seeks treble damages for Apcon's willful infringement of the Asserted Patents under 35 U.S.C. § 284.  Gigamon also seeks a permanent injunction against Apcon, requiring Apcon to refrain from infringing the Asserted Patents.  Gigamon seeks damages beginning August 30, 2019.

Gigamon incorporates by reference the expert reports of Drs. Kevin Almeroth, Kevin Jeffay, Daniel Massey, and Stephen Becker providing further details regarding Gigamon's contentions.

Apcon contends that Gigamon tortiously interfered with Apcon's alleged prospective business relationship(s) with ███ specific entities.   Gigamon disputes Apcon's claim and incorporates by reference its motion practice on this subject.  *See* Section XI for a list of pending motions.

In any event, Apcon is not entitled to a finding that Gigamon tortiously interfered with any alleged prospective business relationship.  Gigamon's infringement claim is not a sham lawsuit, nor is it objectively baseless.  Apcon's state law tortious interference claim is therefore preempted by Gigamon's infringement claims.  Further, Apcon has not met the necessary showing on any of the elements of the state law tort of tortious interference with prospective business relationships. And Gigamon disputes Apcon is entitled to damages for any such interference.  On February 5, 2021—months after the close of fact and expert discovery and summary judgment briefing— Apcon, through amendments to the joint proposed pretrial order and jury instructions, first indicated to Gigamon that it was seeking "exemplary damages" for Gigamon's alleged tortious interference.  But Apcon did not plead that it was seeking "exemplary damages" in its tortious interference counterclaim or its prayer for relief.  Dkt.59, ¶¶ 101–108.  Neither did Apcon disclose it was seeking "exemplary damages" in its interrogatory responses to Gigamon's Interrogatory No. 20, which required Apcon to "[s]tate the amount of damages that Apcon alleges it has suffered by virtue of Gigamon's alleged tortious interference, and identify the complete factual and legal bases for Apcon's claim for damages[.]"  Regardless of whether the Court allows Apcon to present its tortious interference counterclaim at trial, the Court should not allow Apcon to request unpleaded and undisclosed "exemplary damages."

Finally, Apcon is not entitled to an award of enhanced damages, injunctive relief, or relief under 35 U.S.C. § 285, including attorney's fees, costs, and interest.

### B.      Apcon's Contentions

Apcon contends that it does not infringe and has not infringed, either directly or indirectly, any asserted claim of the asserted patents.  Further, Apcon denies any indirect infringement prior to the filing or service of the complaint, and Gigamon has failed to locate any evidence that Apcon had knowledge of any of the asserted patents or their alleged infringement prior to the filing of the complaint in this action.  Apcon denies any willful infringement has occurred, and Gigamon has failed to locate any evidence to support its willful infringement theory.

Apcon contends that each of the asserted claims is invalid under 35 U.S.C. §§ 102 and/or 103.  Apcon further contends that Gigamon's claims for relied are barred, either in whole or in part, by the equitable doctrines of waiver, unclean hands, acquiescence, and/or estoppel.

Apcon denies that Gigamon is entitled to any damages award, under any theory, due to the alleged infringement.  To the extent damages are to be awarded, Gigamon's claim for damages is limited by 35 U.S.C. §§ 286 to August 30, 2013.  Gigamon's damages claim is further limited to August 30, 2019, the date the Complaint was filed, for failing to comply with the marking requirement.  Gigamon's damages claim is also limited by 28 U.S.C. § 1498, because Apcon sells the Accused Products to the United States government or its contractors and subcontractors.  Apcon also has sold some of Accused Products to customers outside the United States, and Gigamon is not entitled to damages on those sales.  For any asserted method claims, damages should also be limited to September 4, 2019 since Apcon was not aware of the Patents-in-Suit until it was served with the Complaint.

With respect to Gigamon's damages calculations, Gigamon's calculations of lost profits and reasonable royalty rely on improper methodologies and Gigamon has failed to provide a suitable basis on which damages may be properly calculated.  Apcon denies that Gigamon is entitled to lost profits, an ongoing royalty, pre-judgment or post-judgment interest or costs, or a

permanent injunction.  Gigamon's claim for costs is further limited by 35 U.S.C. § 288.  Apcon denies that Gigamon is entitled to any relief whatsoever.

Apcon contends it has engaged in all relevant activities in good faith, thereby precluding Gigamon, even if it prevails, from recovering its reasonable attorneys' fees or costs under 35 U.S.C. § 285.  Apcon contends this is an exceptional case pursuant to 35 U.S.C. § 285 entitling Apcon to attorneys' fees, costs, and interest.

Apcon contends that Gigamon and its affiliates tortiously interfered with Apcon's prospective business relationships with multiple investors interested in acquiring Apcon by bringing sham patent litigation against Apcon.  Apcon contends it is entitled to actual damages in the form of attorneys' fees spent to defend against Gigamon's sham litigation, exemplary damages, and an order and judgment permanently enjoining Gigamon from further interfering with Apcon's prospective business relationships.  Apcon is also entitled to a permanent injunction against Gigamon, requiring Gigamon and other persons bound by an injunction under Rule 65(d) to refrain from interfering with Apcon relationships with potential investors.

Apcon contends claims 1 and 8 of the '862 patent are invalid because they are anticipated by Junos 8.1.  Apcon contends claims 1 and 8 of the '862 patent are invalid because they are anticipated by Gallatin 364. Apcon contends claims 1 and 8 of the '862 patent are invalid because they are anticipated by GigaVUE-MP Three-Minute Overview.  Apcon contends claims 1 and 8 of the '862 patent are invalid because of the on-sale bar created by the sale of GigaVUE-MP, which practiced claims 1 and 8 of the '862 patent and was on sale more than one year prior to the priority date for the '862 patent.  Apcon contends claims 1 and 8 of the '862 patent are invalid because they would have been obvious to a person of ordinary skill in the art in light of the combination of Gigamon '656 APA and GigaVUE-MP Three-Minute Overview.

Apcon contends claims 1 and 12 of the '466 patent are invalid because they are anticipated by Tadimeti.  Apcon contends claims 1 and 12 of the '466 patent are invalid because they would have been obvious to a person of ordinary skill in the art in light of the combination of Tadimeti and Junos 7.4.  Apcon contends claims 1 and 12 of the '466 patent are invalid because they would have been obvious to a person of ordinary skill in the art in light of the combination of Gigamon '656 APA, Daniel, and GigaVUE-MP Three Minute Overview.

Apcon contends claims 21 and 22 of the '819 patent are invalid because they are anticipated by Junos 8.1.  Apcon contends claims 21 and 22 of the '819 patent are invalid because they are anticipated by Network Critical.

Apcon contends claims 9 and 10 of the '557 patent are invalid because they are anticipated by Winter. Apcon contends claims 9 and 10 of the '557 patent are invalid because they would have been obvious to a person of ordinary skill in the art in light of the combination of Ahn and McGhee. Apcon contends claims 9 and 10 of the '557 patent are invalid because they would have been obvious to a person of ordinary skill in the art in light of the combination of Gigamon '656 APA and Winter.

Apcon contends claims 1 and 14 of the '656 patent are invalid because they are anticipated by Junos 5.6. Apcon contends claims 1 and 14 of the '656 patent are invalid because they are anticipated by MacBride. Apcon contends claims 1 and 14 of the '656 patent are invalid because they are anticipated by Afek. Apcon contends claims 1 and 14 of the '656 patent are invalid because they are anticipated by Gigamon '656 APA.

Apcon contends claim 16 the '049 patent is invalid because it is anticipated by NetScout. Apcon contends claim 16 the '049 patent is invalid because it is anticipated by Junos 8.1. Apcon contends claim 16 of the '049 patent is invalid due to the on-sale bar created by the sale of Juniper

hardware running Junos 8.1 software, which practiced claim 16 of the '049 patent and was on sale more than one year prior to the priority date of the '049 patent. Apcon contends claim 16 of the '049 patent is invalid due to the on-sale bar created by the sale of GigaSMART software running on the GigaVUE-2404 with the GigaVUE-OS operating system, which practiced claim 16 of the '049 patent and was on sale more than one year prior to the priority date of the '049 patent. Apcon contends claim 16 of the '049 patent is invalid because it would have been obvious to a person of ordinary skill in the art in light of the combination of Gigamon '656 APA, Sivan, and GigaVUE-MP Three Minute Overview.

Apcon incorporates by further reference the expert reports of Dr. Wicker and Ms. Salters providing further details regarding Apcon's contentions.

## V.   STIPULATIONS AND UNCONTESTED FACTS

### A.   Uncontested Facts

1.     Gigamon is a Delaware corporation with its principal place of business at 3300 Olcott St., Santa Clara, California 95054.

2.     Gigamon filed its Complaint in this action on August 30, 2019.

3.     Gigamon is the assignee of the '862 patent and owns all right, title, and interest in and to the '862 patent, including the right to sue for patent infringement.

4.     The '862 patent is entitled "Mapping a Port on a Packet Switch Appliance" and issued on October 29, 2013 from an application filed September 4, 2010.  The '862 patent's application is a continuation of U.S Patent Application No. 11/701,731, filed on February 2, 2007. The priority date of the '862 patent is February 2, 2007.

5.     Gigamon is the assignee of the '466 patent and owns all right, title, and interest in and to the '466 patent, including the right to sue for patent infringement.

6.     The '466 patent is entitled "Creating and/or Managing Meta-data for Data Storage Devices Using a Packet Switch Appliance" and issued on September 2, 2014 from an application filed August 26, 2010.  The '466 patent's application is a continuation of U.S Patent Application No. 11/933,239, filed on October 31, 2007.  The priority date of the '862 patent is October 31, 2007.

7.     Gigamon is the assignee of the '819 patent and owns all right, title, and interest in and to the '819 patent, including the right to sue for patent infringement.

8.     The '819 patent is entitled "Network Switch with By-pass Tap" and issued on September 9, 2014 from an application filed February 26, 2010.  The priority date of the '819 patent is February 26, 2010.

9.     Gigamon is the assignee of the '557 patent and owns all right, title, and interest in and to the '557 patent, including the right to sue for patent infringement.

10.     The '557 patent is entitled "Systems and methods for Packet De-duplication" and issued on October 28, 2014 from an application filed April 8, 2011.  The priority date of the '557 patent is April 8, 2011.

11.     Gigamon is the assignee of the '656 patent and owns all right, title, and interest in and to the '656 patent, including the right to sue for patent infringement.

12.     The '656 patent is entitled "Packet Switch Methods and Systems" and issued on July 7, 2015 from an application filed February 12, 2013.  The '656 patent's application is a continuation of U.S. Patent Application No. 12/870,731, filed on August 27, 2010, which is a continuation of U.S. Patent Application No. 12/255,561, filed on October 21, 2008, which is a continuation of U.S. Patent Application No. 11/123,273, filed on May 5, 2005, which claims the

benefit of U.S. Provisional Patent Application No. 60/568,310, filed on May 5, 2004.  The priority date of the '656 patent is May 5, 2004.

13.     Gigamon is the assignee of the '049 patent and owns all right, title, and interest in and to the '049 patent, including the right to sue for patent infringement.

14.     The '049 patent is entitled "Monitoring Virtualized Network" and issued on September 19, 2017 from an application filed July 27, 2012.  The priority date of the '049 patent is July 27, 2012.

15.     Apcon is an Oregon corporation having a principal place of business at 9255 SW Pioneer Ct., Wilsonville, Oregon 97070. Apcon also owns and operates a Regional Center located at 4351 Mapleshade Creek, Plano, Texas 75093.

16.     Apcon manufactures the Accused Products in the United States.

17.     Apcon and Gigamon compete in the network monitoring equipment market.

18.     Apcon and Gigamon are not the only competitors in the network monitoring equipment market.

19.     JUNOS™ Internet Software Feature Guide, Release 5.6 ("Junos 5.6") was publically available as a publication at least as early as April 20, 2003, and therefore qualifies as prior under §§ 102(a)–(b) to the '656 patent.

20.     U.S. Patent No. 6823383 ("MacBride") was filed September 10, 2002, published on March 11, 2004, and issued on November 23, 2004. MacBride is prior art under §§ 102(a) and (e) to the '656 patent.

21.     U.S. Patent No. 7707305 ("Afek") was filed on August 14, 2001, claiming a priority date of October 17, 2000, published on June 27, 2002, and issued on April 27, 2010. Afek is prior art under §§ 102(a), (b), and (e) to the '656 patent.

22.     JUNOS™ Internet Software Feature Guide, Release 8.1 ("Junos 8.1") was publically available as a publication at least as early as November 6, 2006, and therefore qualifies as prior under §§ 102(a)–(b) to the '819 patent and '049 patent, and under § 102(a) to the '862 patent.

23.     GigaVUE-MP Three-Minute Overview is a document published at least as early as October 27, 2005, and therefore it is prior art under §§ 102(a)–(b) to the '049 patent, '862 patent, and '466 patent.

24.     U.S. Pub No. 2005/0265364 ("Gallatin 364") was filed on May 5, 2005, claiming a priority date of May 5, 2004, and was published on December 1, 2005. Gallatin 364 is prior art under §§ 102(a), (b), and (e) to the '862 patent.

25.      "NetScout nGenius 1500 Series Packet Flow Switch Data Sheet" was publicly available at least as early as June 1, 2012, and therefore qualifies as prior art under § 102(a) to the '049 patent.

26.     U.S. Patent No. 8,279,871 ("Sivan") was filed on October 29, 2008 and issued on October 2, 2012, with a claim to priority as early as October 29, 2007. Sivan is therefore prior art under § 102(e) to the '049 patent.

27.     U.S. Patent No. 7,656,812 ("Tadimeti") was filed on July 27, 2006, published on January 31, 2008, and issued on February 2, 2010 and thus qualifies as prior art under § 102(e) to the '466 patent.

28.     JUNOS™ Internet Software Feature Guide, Release 7.4 ("Junos 7.4") was publicly available as early as October 25, 2005, and thus qualifies as prior art under §§ 102(a)–(b) to the '466 patent.

29.     U.S. Patent No. 7,706,363 ("Daniel") was filed on April 21, 2004 and issued on April 27, 2010, and thus qualifies as prior art under § 102(e) to the '466 patent.

30.     U.S. Pub. No. 2009/0073897 ("Winter") was filed on September 13, 2007 and published on March 19, 2009, and thus qualifies as prior art under §§ 102(a), (b), and (e) to the '557 patent.

31.     U.S. Pat. No. 8,238,288 ("Ahn") was filed on December 27, 2007, published on October 9, 2008, and issued on August 7, 2012, and thus qualifies as prior art under §§ 102(a), (b), and (e) to the '557 patent.

32.     U.S. Patent No. 8,462,781 ("McGhee") was filed on April 6, 2011, published on October 11, 2012, and was issued on June 11, 2013, and thus qualifies as prior art under § 102(e) to the '557 patent.

33.     *Safely Inline, Virtually Inline V-Line™ Bypass TAPs* Website[1] ("Network Critical") was publicly available at least as early as February 18, 2007, and therefore qualifies as prior art under §§ 102(a)–(b) to the '819 patent.

34.     Gigamon does not possess GigaSMART code dated prior to August 12, 2011, which is the date when Gigamon migrated its source code to another repository.

**B.     Apcon's Uncontested Facts[2],[3]**

35.     If it proves infringement of a valid claim, Gigamon is not entitled to damages prior to August 30, 2019.

---

[1]

https://web.archive.org/web/20070218224755/www.criticaltap.com/groupdisplay.asp?ngroupid=26

[2] Gigamon does not dispute these facts, yet would not agree to include them in the joint list of uncontested facts.

[3] Gigamon disputes that these are "facts."  *See* Section IV.A, Gigamon's Contentions.

36.    Gigamon does not accuse Apcon of indirect infringement or willful infringement prior to August 30, 2019.

### C.    Agreed Stipulations

1.    <u>Demonstratives For Opening Statements.</u>  By no later than 12:00 p.m. central time on the calendar day before opening statements, the parties will exchange, by email, lists of (a) any exhibits and (b) copies of any demonstrative exhibits, that the party intends to use in its opening statement.  The parties will exchange objections to these exhibits and demonstratives by 3:00 p.m. central time that same day.  By no later than 5:00 p.m. central time that same day, the parties will meet and confer to resolve any objections.  For any non-documentary and/or live demonstratives, different procedures apply as outlined below.

2.    <u>Demonstratives for Direct Examination.</u>  By no later than 7:00 p.m. central time two calendar days before a witness is called, the party calling the witness (the "disclosing party") will provide to the other party (the "receiving party"), by email, copies of all demonstrative exhibits that the disclosing party anticipates using on direct examination.  The receiving party will provide objections to such demonstratives by 8:30 p.m. central time that evening.  The parties will then meet and confer regarding all objections by 9:30 p.m. central time that same evening.  The receiving party will not use a demonstrative exhibit before the disclosing party uses it.

3.    <u>Non-Documentary and/or Live Demonstratives.</u>  The parties will make available for inspection all non-documentary demonstratives or live demonstratives, such as physical items that are not on the party's respective exhibit list, that they plan to use during direct examination or during opening or closing statements by 7:00 p.m. central time two nights before their intended use.  The parties will exchange objections to these non-documentary demonstratives or live demonstratives by 8:30 p.m. central time on the night before their intended use.  The parties will

then meet and confer regarding all objections by 9:30 p.m. central time that same evening. Demonstratives previously displayed during the trial need not be disclosed again.

4.      <u>Non-Substantive Edits to Demonstratives.</u>  The parties may make reasonable, non-substantive edits or corrections of typographical and similar errors to a demonstrative provided that the edited demonstrative is disclosed before its first use.

5.      <u>Demonstratives that Do Not Require Disclosure.</u>  The above disclosure stipulations do not apply to (a) demonstratives used for cross-examination only; (b) demonstratives created in the courtroom during trial; and (c) the enlargement, highlighting, ballooning, underlining, or the like, of trial exhibits or transcripts of trial testimony, or transcripts of deposition testimony for which objections have been cleared.

6.      <u>Demonstratives Created in the Courtroom.</u>  A party who creates a demonstrative in the courtroom must provide the other party with a photograph or other electronic file of the demonstrative by 7:00 p.m. central time the same day.

7.      <u>Witnesses.</u>  Each party will provide notice, by email, no later than 7:00 p.m. central time each day of all witnesses intended to be presented live or by deposition two calendar days later at trial.  For example, if a witness will testify live on a Thursday, the presenting party must identify the witness by 7:00 p.m. central time on Tuesday.  Such notice must indicate the intended order of call and whether the witness will be presented live or by deposition. The Parties agree that, except for a party representative attending trial at counsel table, any fact witness appearing in person shall be sequestered until he/she testifies, and any trial testimony preceding the testimony of the fact witness shall not be disclosed to that witness directly or indirectly. Each fact witness shall resume his/her sequestration after he/she testifies if the witness is subject to recall. Once the

cross-examination of a fact or expert witness commences, lawyers shall not confer with the witness about their testimony until cross-examination is concluded.

8. <u>Exhibits Used on Direct Examination of Witnesses.</u>  Each party will provide, by email, a list of all exhibits expected to be used during direct examination no later than 7:00 p.m. central time two calendar days before such intended use, and the receiving party shall provide objections to such exhibits by 8:30 p.m. central time that evening.  The parties' disclosures will reflect a good faith estimate of the exhibits that will be used with a particular witness and reasonable efforts will be made to streamline disclosures such that they do not include excessive numbers of exhibits that do not ultimately get used.  The parties will then meet and confer regarding all objections by 9:30 p.m. central time that same evening.  This stipulation does not apply to witnesses called adverse.

9. <u>No Advance Notification.</u>  The parties do not need to provide notice of exhibits to be used solely for impeachment or to be used during cross-examination or examination of an adverse witness.

10. <u>Exhibits on Either Party's Exhibit List.</u>  Each party may use an exhibit on either party's exhibit list for which no objection remains pending, even if not introduced by the designating party, subject to the requirements of this section.

11. <u>Use of Pre-Admitted Exhibits During Opening.</u>  During opening statements, the parties may show the jury any pre-admitted exhibit if the exhibit will be the subject of testimony and explained to the jury by a witness at trial and is disclosed in accordance with § V.B.1.

12. <u>Witnesses Called by Deposition.</u>  For each witness that a party intends to call by deposition, the party will provide, by email, a list of deposition designations the party intends to present for that witness along with a listing of each trial exhibit that the party seeks to introduce

with that testimony, by 1:00 p.m. central time three calendar days before the designation is to be read or played at trial.  Counter-designations, which must be within the scope of the opening deposition designation, along with notification of withdrawal of any unresolved objections to designated testimony and/or exhibits are due by 8:30 p.m. central time the same evening, and the parties will meet and confer by 9:30 p.m. central time that evening regarding objections.  Any unresolved objections will be raised with the Court the next morning.  The party that seeks to read or play the deposition testimony must also provide the opposing party by 7:00 p.m. central time one calendar day before the deposition testimony is to be played, a workable copy of the actual video recordings to be played (or testimony to be read), including all designations and counter-designations included sequentially (*i.e.*, in the order that they appeared at the deposition), regardless of who designated the testimony.  Designated testimony from a witness will be introduced in the sequence in which the testimony was originally given. The time available for each side's trial presentation shall be reduced by the length if its designations or counter-designations actually played or read at trial. If played, such time shall be measured by the amount of time of each party's designations. If read, such time shall be measured by the lines of testimony each party designates as a percentage of the total number of lines read.

13. <u>Witness Binders.</u> The parties need not prepare a binder of evidence or demonstratives for a witness; however, if a party provides a binder to a witness, the party will provide, subject to any protocols related to the COVID-19 pandemic, at least one copy to the opposing side at the same time the binder is presented to the witness.

14. The parties reserve their rights to propose modifications to this Order, and the attached exhibits, for good cause and subject to the Court's approval.  Good cause will include any

modifications made necessary by subsequent Court orders, including the Court's rulings on the parties' pending summary judgment and *Daubert* motions, evidentiary issues, or any other matter.

## VI.    CONTESTED ISSUES OF FACT AND LAW

### A.    Gigamon's Contested Issues of Fact and Law

1.    Whether Apcon infringes the Asserted Patents.

2.    Whether Apcon willfully infringes the Asserted Patents.

3.    Whether Gigamon is entitled to damages to compensate for Apcon's infringement and, if so, what amount.

4.    Whether this case is an exceptional case pursuant to 35 U.S.C. § 285 and whether Gigamon is entitled to an award of attorneys' fees.

5.    Whether Gigamon is entitled to taxable costs.

6.    Whether Gigamon is entitled to prejudgment and post-judgment interest.

7.    Whether Gigamon is entitled to a permanent injunction against Apcon, requiring Apcon to refrain from infringing the Asserted Patents.

8.    Whether Apcon has proven, by clear and convincing evidence, that any Asserted Claim of the Asserted Patents is invalid.

9.    The level of ordinary skill in the art for the Asserted Patents.

10.    Whether Apcon has shown that this case is an exceptional case pursuant to 35 U.S.C. § 285, entitling Apcon to attorneys' fees, costs, and interest.

11.    Whether Apcon has proven that its tortious interference claim under Texas law is not preempted by Gigamon's patent infringement claims under Federal law, which requires Apcon to prove by clear and convincing evidence that (1) this patent lawsuit was objectively baseless; and (2) Gigamon brought this lawsuit in subjective bad faith.

12.     Whether Apcon has shown that Gigamon tortiously interfered with Apcon's prospective business relations under Texas law.

13.     Whether Apcon is entitled to damages or attorneys' fees for Gigamon's tortious interference and, if so, what amount.

14.     Whether Apcon is entitled to a permanent injunction against Gigamon, requiring Gigamon to refrain from interfering with Apcon's prospective business relations.

**B.     Apcon's Contested Issues of Fact and Law**

1.     Whether Gigamon has shown by a preponderance of the evidence that Apcon infringed one or more of the asserted claims, directly or indirectly.

2.     Whether Apcon has shown by clear and convincing evidence that one or more of the asserted claims are invalid under 35 U.S.C. §§ 102 and/or 103.

3.      Whether Gigamon is entitled to any damages, and if so, what amount.

4.     Whether Gigamon is entitled to a permanent injunction.

5.     Whether Gigamon has shown that this case is an exceptional case under 35 U.S.C. § 285, entitling Gigamon to attorneys' fees, costs, and interest.

6.     Whether Apcon has shown that this case is an exceptional case pursuant to 35 U.S.C. § 285, entitling Apcon to attorneys' fees, costs, and interest.

7.     Whether Apcon has shown that Gigamon and its affiliates tortiously interfered with Apcon's prospective business relations under Texas law.

8.     Whether Apcon is entitled to actual damages to compensate for Gigamon's tortious interference and exemplary damages, and, if so, what amount.

9.     Whether Apcon is entitled to a permanent injunction against Gigamon and other persons bound by an injunction under Rule 65(d), requiring Gigamon to refrain from interfering with Apcon's prospective business relations.

## VII.    LIST OF WITNESSES

Gigamon's witness list is attached as Exhibit 1.

Apcon's witness list is attached as Exhibit 2.

## VIII.    LIST OF EXHIBITS

Gigamon's exhibit list and Apcon's objections thereto is attached as Exhibit 3.

Apcon's exhibit list and Gigamon's objections thereto is attached as Exhibit 4.

## IX.    DEPOSITION DESIGNATIONS

Gigamon's deposition designations, Apcon's objections thereto and counter-designations, and Gigamon's objections to Apcon's counter-designations are attached as Exhibit 5.

Apcon's deposition designations, Gigamon's objections thereto and counter-designations, and Apcon's objections to Gigamon's counter-designations are attached as Exhibit 6.

## X.    JURY INSTRUCTIONS AND VERDICT FORM

Proposed Jury Instructions, including competing proposals for certain instructions, are attached as Exhibit 7.

Gigamon's proposed Verdict Form is attached as Exhibit 8.  Apcon's proposed Verdict Form is attached as Exhibit 9.

## XI.    LIST OF PENDING MOTIONS

The following motions are currently pending before the Court:

| Docket Number | Motion |
|---|---|
| 63 | Gigamon's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) (Apcon's Tortious Interference Counterclaim) |
| 160 | Apcon's Motion to Strike or Exclude Certain Opinions of Dr. Stephen L. Becker |
| 161 | Apcon's Motion for Partial Summary Judgment |
| 162 | Gigamon's Motion to Strike Portions of the Expert Reports of Dr. Stephen Wicker |

| Docket Number | Motion |
|---|---|
| 163 | Gigamon's Motion to Strike in Part the Testimony of Ambreen Salters |
| 164 | Gigamon's Motion for Summary Judgment of No Tortious Interference |
| 223 | Gigamon's Motions in Limine |
| 224 | Apcon's Motions in Limine |

## XII.    PROBABLE LENGTH OF TRIAL

Gigamon proposes the probable length of trial is 5 days.  Apcon proposes the probable length of trial is 7 days.

## XIII.    MANAGEMENT CONFERENCE LIMITATIONS

None.

## XIV.    CERTIFICATIONS

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

(1) Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

(2) Subject to the parties' pending motions, discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with; and

(3) Each exhibit in the parties' lists of exhibits attached hereto:

(a) exists;

(b) is numbered; and

(c) has been disclosed and shown to opposing counsel.

Approved as to form and substance:

By: /s/ *William E. Davis, III*
William E. Davis, III
(TX Bar No.24047416)
**THE DAVIS FIRM P.C.**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661
bdavis@davisfirm.com

Jonas R. McDavit (*pro hac vice*)
Cosmin Maier (*pro hac vice*)
Steven M. Balcof (*pro hac vice*)
Elizabeth Weyl (*pro hac vice*)
Francesco D. Silletta (*pro hac vice*)
Joze F. Welsh (*pro hac vice*)
Amy I. Wann (*pro hac vice*)
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
Email:  jmcdavit@desmaraisllp.com
Email:  cmaier@desmaraisllp.com
Email:  sbalcof@desmaraisllp.com
Email:  fsilletta@desmaraisllp.com
Email:  jwelsh@desmaraisllp.com
Email:  awann@desmaraisllp.com

Emily H. Chen (CA 302966)
**DESMARAIS LLP**
101 California Street
San Francisco, CA 94111
Telephone: (415) 573-1806
Facsimile: (415) 573-1901
echen@desmaraisllp.com

***Counsel for Plaintiff Gigamon Inc.***

By: *Michael W. De Vries*
Clyde Moody Siebman
Texas State Bar No. 18341600
Elizabeth Siebman Forrest
Texas State Bar No. 24086207
Anna Rebecca Skupin
Texas State Bar No. 24084272
**SIEBMAN FORREST BURG & SMITH
LLP**
300 North Travis Street
Sherman, TX 75090-0070
Telephone: (903) 870-0070
Facsimile: (903) 870-0066
clydesiebman@siebman.com
elizabethforrest@siebman.com
beccaskupin@siebman.com

Michael W. De Vries
**KIRKLAND & ELLIS LLP**
555 South Flower Street, Suite 3700
Los Angeles, CA, 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
michael.devries@kirklandcom

Gianni Cutri
Katherine E. Rhoades (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
gianni.cutri@kirkland.com
katherine.rhoades@kirkland.com

Adam R. Alper (*pro hac vice*)
Akshay S. Deoras (*pro hac vice*)
Kristen P. L. Reichenbach
M. Reza Dokhanchy (*pro hac vice*)
Natalie K. Flechsig (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

23

Facsimile: (415) 4309-1500
adam.alper@kirkland.com
akshay.deoras@kirkland.com
kristen.reichenbach@kirkland.com
reza.dokhanchy@kirkland.com
natalie.flechsig@kirkland.com

Leslie M. Schmidt (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Ave.
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
leslie.schmidt@kirkland.com

Joshua Glucoft (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
2049 Century Park East
Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900
josh.glucoft@kirkland.com

Richard L. Schwartz
Texas State Bar No. 17869500
Enrique Sanchez , Jr.
Texas State Bar No. 24068961
**WHITAKER CHALK SWINDLE &**
**SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, TX 76102-4135
Telephone: (817) 878-0524
Facsimile: (817) 878-0501
rschwartz@whitakerchalk.com
rsanchez@whitakerchalk.com

*Counsel for Defendant Apcon, Inc.*

24

This Joint Pretrial Order is hereby approved this ___ day of February, 2021.

                                                              _____

                                                              RODNEY GILSTRAP
                                                              UNITED STATES DISTRICT JUDGE

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on February 8, 2021, the foregoing document was filed in compliance with Local Rule CV-5(a), and thereby served on all counsel who are deemed to have consented to electronic service, per Local Rule CV-5(a)(3).

_/s/ William E. Davis, III_
William E. Davis, III