**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

**GIGAMON INC.,**

**Plaintiff,**

**v.**

**APCON, INC.,**

**Defendant.**

**Civil Action No. 2:19-cv-300-JRG**

**JURY TRIAL DEMANDED**

**PLAINTIFF GIGAMON INC.'S OPPOSITION TO APCON'S MOTION FOR AN AWARD OF ATTORNEYS' FEES UNDER 35 U.S.C. § 285**

# TABLE OF CONTENTS

**Pages**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 1

III. LEGAL STANDARDS ........ 2

IV. ARGUMENT ........ 3

A. Gigamon's Infringement Allegations Were Reasonable ........ 5

1. Gigamon's Infringement Theory Has Been Consistent Throughout The Case And The Court's Claim Construction Supported That Theory ........ 5

2. Gigamon Presented The Same Infringement Theory To The Jury And There Was More Than Adequate Evidence To Find Apcon Infringed The Port Patents ........ 6

3. All Of Gigamon's Asserted Patents Survived Summary Judgment ........ 8

4. The Court's Rulings Throughout This Litigation Demonstrate Gigamon's Infringement Claims Had Merit ........ 8

5. The Precedent Apcon Cites Does Not Compel A Different Result ........ 9

B. Gigamon Reasonably And Diligently Litigated This Case ........ 10

1. Gigamon Narrowed Its Claims In Good Faith At Appropriate Junctures In The Case ........ 10

2. Gigamon Filed A Trial Motion In Good Faith And For Legitimate Reasons ........ 11

3. Gigamon Filed This Lawsuit Because It Believes Apcon Infringes Its Patents ........ 12

V. APCON'S MOTION IS UNTIMELY ........ 14

VI. CONCLUSION ........ 14

## TABLE OF AUTHORITIES

**Pages**

## CASES

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*,
858 F.3d 1371 (Fed. Cir. 2017) ....................3, 8, 14

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
No. 2:14-CV-0911-JRG-RSP, 2016 WL 1105364 (E.D. Tex. Feb. 4, 2016)....................11

*Cosmo Techs. Ltd. v. Actavis Lab'ys Fl, Inc.*,
No. CV 15-164-LPS, 2019 WL 1417459 (D. Del. Mar. 28, 2019)....................11

*Gaymar Indus. v. Cincinnati Sub-Zero Prod.*,
790 F.3d 1369 (Fed. Cir. 2015) ....................5

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
558 F.3d 1368 (Fed. Cir. 2009) ....................13

*Innovation Scis., LLC v. Amazon.com*,
842 F. App'x 555 (Fed. Cir. 2021)....................10

*MarcTec, LLC v. Johnson & Johnson*,
664 F.3d 907 (Fed. Cir. 2012) ....................10

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) ....................3

*Packet Intel. LLC v. NetScout Sys., Inc.*,
No. 2:16-CV-00230-JRG, 2019 WL 1642714 (E.D. Tex. Apr. 15, 2019)....................4, 5

*Sorkin v. Universal Bldg. Prod. Inc.*,
No. 1:08-CV-133-RC, 2010 WL 519742 (E.D. Tex. Feb. 9, 2010)....................10

*Stragent, LLC v. Intel Corp.*,
No. 6:11-CV-421, 2014 WL 6756304 (E.D. Tex. Aug. 6, 2014)....................3, 4, 8, 12

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
726 F.3d 1306 (Fed. Cir. 2013) ....................10

*Xiaohua Huang v. Huawei Techs. Co.*,
No. 2:15-CV-01413-JRG-RSP, 2017 WL 1133201 (E.D. Tex. Mar. 27, 2017),
*aff'd*, 735 F. App'x 715 (Fed. Cir. 2018) ....................13

## STATUTES

35 U.S.C. § 285 ....................4, 15

**TABLE OF AUTHORITIES (cont'd)**

**Pages**

**TABLE OF EXHIBITS**

| | |
|---|---|
| Ex. 1 | November 21, 2019 Maier Email to Schwartz |
| Ex. 2 | November 25, 2019 Maier Email to Schwartz |
| Ex. 3 | November 26, 2019 Maier Email to Schwartz |
| Ex. 4 | December 10, 2019 Silletta Email to Schwartz |
| Ex. 5 | December 19. 2019 Silletta Email to Schwartz |
| Ex. 6 | January 10, 2020 Silletta Email to Schwartz |
| Ex. 7 | March 6, 2020 McDavit Email to Schwartz |
| Ex. 8 | March 9, 2020 Schwartz Email to McDavit |
| Ex. 9 | April 27, 2020 McDavit Email to Schwartz |
| Ex. 10 | May 29, 2020 McDavit Email to Deoras |
| Ex. 11 | June 15, 2020 McDavit Email to Deoras |
| Ex. 12 | June 24, 2020 Weyl Email to Kirkland & Ellis |
| Ex. 13 | August 19, 2020 Silletta Email to Kirkland & Ellis |
| Ex. 14 | Excerpts from the February 22, 2020 Pretrial Conference Transcript |
| Ex. 15 | March 5, 2021 Silletta Email to Reichenbach |
| Ex. 16 | Excerpts from the *Gigamon Inc. v. Apcon, Inc.* (2:19-cv-300-JRG) Jury Trial |
| Ex. 17 | Excerpts from Gigamon's November 6, 2019 Infringement Contentions |
| Ex. 18 | Excerpts from the August 24, 2020 Opening Expert Report of Dr. Kevin Jeffay |
| Ex. 19 | Excerpts from the August 24, 2020 Opening Expert Report of Dr. Kevin Almeroth |
| Ex. 20 | Excerpts from the September 24, 2020 Deposition of Dr. Kevin Jeffay |
| Ex. 21 | Excerpts from the September 23, 2020 Deposition of Dr. Kevin Almeroth |
| Ex. 22 | May 21, 2021 Matalon Email to Davis |

## I. INTRODUCTION

This was not an exceptional case. The tale Apcon spins in its unjustified and untimely fees motion is untethered from the record. Gigamon asserted ***six*** patents against Apcon and ***all six*** survived pretrial motion practice. That does not reflect objectively baseless claims, let alone claims that are so meritless as to render this case exceptional.

Apcon now claims that it was unreasonable for Gigamon to litigate this case after the Court's Claim Construction Order. But Gigamon presented more than sufficient evidence at trial for the jury to find that Apcon infringed Gigamon's patents. Indeed, Gigamon timely moved for a judgment of a matter of law and/or a new trial on that very issue. Dkt. 320.

Moreover, and fatal to Apcon's fees motion, Apcon ***did not move for summary judgment*** on ***any issue*** related to the Court's Claim Construction Order. It never sent any correspondence to Gigamon at the time demanding that Gigamon drop this case due to the Order. It never raised this issue at any time. And when Apcon moved for entry of judgment as a matter of law on the issue at trial, the Court denied the Motion. All of this underscores the reasonableness of Gigamon's claims and the unreasonableness of Apcon's untimely fees motion.

Finally, this is not a case fraught with exceptional behavior. Gigamon was a diligent plaintiff prosecuting reasonable infringement allegations, all of which remained intact up to and through the jury trial. Gigamon followed the Court's instructions and expectations and reasonably narrowed its case before trial. And the Court disposed of Apcon's conspiracy-laden tort claims long ago. In sum, there is no behavior that would justify fee-shifting, and the Court should deny Apcon's Motion.

## II. BACKGROUND

From the outset, this case concerned Apcon's infringement of Gigamon's patents. Gigamon followed the Court's expectations and instructions for appropriately narrowing this case.

Indeed, after Gigamon filed infringement contentions in November 2019, the parties began discussing narrowing procedures. And Gigamon repeatedly made clear to Apcon that it was amenable to a mutual procedure for narrowing the case, even going so far as to present a concrete proposal for doing so. Exs. 1-5 [Nov. 2019 – Dec. 2019 Maier Emails to Schwartz]; Ex. 6 [Jan. 10, 2020 Silletta Email to Schwartz]; Ex. 7 [Mar. 6, 2020 McDavit Email to Schwartz]; Ex. 8 [Mar. 9, 2020 Schwartz Email to McDavit].

Apcon rebuffed those efforts, forcing Gigamon to move to compel Apcon to respond to normal, written discovery. Dkt. 45. On April 27, 2020, the Court granted that motion, and found that Gigamon was not required to reduce the number of asserted claims at this time. Dkt. 66, at 1. Gigamon reiterated its willingness to work with Apcon to reduce the number of asserted claims before the claim construction hearing and before opening expert reports, which it did. Exs. 9-11 [Apr. 2020 – Jun. 2020 McDavit Emails to Deoras]; Ex. 12 [Jun. 24, 2020 Weyl Email to Kirkland & Ellis]; Ex. 13 [Aug. 19, 2020 Silletta Email to Kirkland & Ellis].

In the ensuing months, Gigamon continued to narrow its asserted claims in accordance with the Court's instructions. *See, e.g.*, Dkt. 212, at 3 (Nov. 23, 2020 Order requiring the parties to narrow claims and invalidity theories); Ex. 14 [Feb. 22, 2021 Pretrial Conference Hr'g Tr., at 15:21-16:18] (The Court instructing both parties to further narrow the case); Ex. 15 [Mar. 5, 2021 Silletta Email to Reichenbach] (Gigamon and Apcon implementing the Court's instruction by narrowing to 8 claims and dropping a patent-in-suit). On April 14, 2021, Gigamon elected the six claims it would present at trial. Dkt. 280.

## III. LEGAL STANDARDS

An exceptional case under 35 U.S.C. § 285 is one that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness,*

*LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). But fee awards should not be "a penalty for failure to win a patent infringement suit." *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017). District courts determine whether a case is exceptional "in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC*, 572 U.S. at 554. "The totality of the circumstances standard is not, however, an invitation to the 'kitchen sink' approach where the prevailing party questions each argument and action of the losing party in an effort to secure attorney's fees." *Stragent, LLC v. Intel Corp.*, No. 6:11-CV-421, 2014 WL 6756304, at *3 (E.D. Tex. Aug. 6, 2014) (Dyk, U.S.C.J. sitting by designation). Rather, "awards of attorney's fees in patent cases should be reserved for rare and unusual circumstances." *Id.*

## IV. ARGUMENT

Apcon predicates its Motion on the allegation that the Court's construction of the Port Terms[1] were "fatal" to Gigamon's claims. But that allegation cannot withstand scrutiny.

***First***, Gigamon's infringement theory was more than reasonable. Gigamon presented its case to the jury, supported by two highly-qualified technical experts in the field of computer networking (Dr. Almeroth, an Emeritus Professor at U.C.S.B., and Dr. Jeffay, a full-tenure professor at U.N.C.). These experts hewed to the Court's construction of the Port Terms, and demonstrated how and why Apcon's products infringed the Port Patents.[2] And over the nine months that elapsed between the Court's Claim Construction Order and the trial, Apcon never once asserted that it believed that Gigamon's claims were no longer tenable: Apcon did not move for summary judgment based on the Port Term constructions, did not move to strike the infringement

---

[1] The "Port Terms" refer collectively to "network port" and "instrument port" and the Court's constructions thereof. The Court's claim construction of the Port Terms did not affect the fifth patent presented at trial, U.S. Patent No. 8,873,557.

[2] U.S. Patent Nos. 8,570,862; 8,824,466; 9,077,656; and 9,769,049.

opinions of Gigamon's technical experts, and did not even bother to write a letter to Gigamon demanding withdrawal of the Port Patents.[3] Moreover, the Court denied Apcon's Rule 50(a) motions that Apcon could not infringe the Port Patents as a matter of law under the Court's Claim Construction. Ex. 16 [Trial Tr. at 1187:12-18, 1212:12-19]. Until this motion, there was no indication that Gigamon's infringement claims lacked merit.

***Second,*** Apcon mischaracterizes Gigamon's litigation conduct. Gigamon followed Court instructions and worked with Apcon to efficiently move this case forward from complaint to trial. Apcon's conspiracy-laden accusations do not change the fact that Gigamon brought and litigated this case because Apcon infringes its patents, and that is what this case was about. Apcon's revisionist approach does not justify fee-shifting. *E.g.*, *Stragent, LLC*, 2014 WL 6756304, at *3 (the totality of the circumstances standard is not, however, an invitation to a "kitchen sink" approach where the prevailing party questions each argument and action of the losing party in an effort to secure attorney's fees"); *Packet Intelligence LLC v. NetScout Sys., Inc.*, No. 2:16-CV-00230-JRG, 2019 WL 1642714, at *3 (E.D. Tex. Apr. 15, 2019) (same).

Ultimately, Apcon brought this motion because Gigamon did not prevail at trial. But that does not justify an exceptional case finding. *See, e.g.*, *Checkpoint Sys., Inc.*, 858 F.3d at 1376 ("The Court has cautioned that fee awards are not to be used as a penalty for failure to win a patent infringement suit" (quoting *Octane Fitness, LLC*, 572 U.S. at 548)); *Gaymar Indus. v. Cincinnati Sub-Zero Prod.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) ("[F]ees are not awarded solely because

---

[3] Apcon also omits that the Court's construction of the Port Terms—even under Apcon's own view—were not case dispositive. Had Apcon successfully defeated the Port Patents pretrial (which it did not even attempt to do), this case would have still been litigated through trial. Thus, Apcon's Motion rests on a false premise: that, under its view of the construction of the Port Terms, this case would have ended after claim construction. But this case would have been litigated and tried either way. It was not exceptional for Gigamon to continue to litigate this case.

one party's position did not prevail."); *Packet Intelligence LLC*, 2019 WL 1642714, at *3 ("Attorneys' fees in patent cases are reserved for rare and unusual circumstances"). This case is not exceptional, and the Court should deny Apcon's motion.

### A. Gigamon's Infringement Allegations Were Reasonable

Apcon argues that the Court's construction of the Port Terms rendered Gigamon's case objectively baseless. Dkt. 321, at 3-8. That is incorrect. The jury could have found that Apcon infringes the Port Patents under the Court's claim construction ruling. Apcon's own litigation conduct, particularly its failure to seek any pretrial relief, belies its contention that this case is exceptional. And, finally, the Court's trial rulings confirmed that Gigamon's case was meritorious.

#### 1. Gigamon's Infringement Theory Has Been Consistent Throughout The Case And The Court's Claim Construction Supported That Theory

From the outset, Gigamon has asserted that Apcon infringes the Port Patents because Apcon's products (as described in ***Apcon's*** product and marketing documentation) comprise a port that connects to and receives packets from a network and a different port that connects and sends packets to an instrument. Gigamon disclosed that theory in its Complaint, described the same theory in detail in its infringement contentions (Ex. 17 [Excerpts from Gigamon's November 6, 2019 Infringement Contentions]), and Gigamon's technical experts reiterated that theory during expert discovery (Ex. 18 [Excerpts from the August 24, 2020 Opening Expert Report of Dr. Jeffay] at ¶¶ 175, 184, 192, n.65; Ex. 19 [Excerpts from the August 24, 2020 Opening Expert Report of Dr. Almeroth] at ¶¶ 100, 115). Gigamon did not "accuse[] ***every*** port on Apcon's devices of being ***both*** a "network port and an instrument port at the same time" in its infringement contentions. Dkt. 321, at 5 (emphasis in original). To the contrary, in the 2019 claim charts that Apcon cites in support of that mischaracterization, Gigamon identifies evidence that Apcon's Accused Products

have ports (Ex. 17) ***and*** that when they are deployed as intended, one or more of those ports function as a network port and one or more of those ports function as an instrument port (*id.*).

And Gigamon's infringement theory ***never*** hinged on the Court adopting constructions that allowed for a port to be configured to be an instrument port and a network port "at the same time." Rather, because Gigamon's allegations focused on the claims in their entirety—not the port terms in a vacuum—Gigamon's infringement theory followed the Court's constructions. And, as such, the Court's construction of the port terms was ***not*** "fatal" to Gigamon's infringement theory, as Apcon asserts in its Motion. Dkt. 321, at 3.

### 2. Gigamon Presented The Same Infringement Theory To The Jury And There Was More Than Adequate Evidence To Find Apcon Infringed The Port Patents

More than adequate evidence supports a finding that Apcon infringed the Port Patents under the Court's claim construction.[4] Gigamon identified numerous ways in which the non-infringement verdict stands in stark contrast to the great weight of the evidence. *See generally* Dkt. 320, at 4-14 (Gigamon's motion for judgment as a matter of law and/or a new trial with regard to the non-infringement verdict concerning the Port Patents). For example, the Accused Apcon Products[5] have ingress ports configured to be connected to a network, and egress ports configured to be connected to an instrument. *Id.* at 6-7; *see id.* at 7 n.5 (collecting trial testimony and trial evidence). Indeed, Gigamon presented evidence that Apcon's Accused Products ***are*** in fact designed, marketed, and sold to connect to networks and instruments and pass information from networks to the instruments. *E.g.*, *id.* at 7 (image from a trial that depicts an Apcon marketing video regarding port selection). Furthermore, ports on the Apcon Accused Products that are

[4] Apcon's invalidity theories, on the other hand, did not follow the Court's claim construction. *See, e.g.*, Dkt. 320, at 17 (Apcon's technical expert admitting that Apcon's invalidity references do not contain ports under the Court's claim construction).
[5] Apcon's Series 3000 and Series 4000 products. *See* Dkt. 320, at 4 n.3.

configured to be network ports are not—and cannot be—configured to be connected to an instrument, and vice versa. *Id.* at 7-8 (citing trial testimony of Apcon engineer Gerry Murphy). Finally, Apcon's ports cannot function as a "network port" and an "instrument port" at the same time. *Id.* at 8 (quoting trial testimony of Apcon's CEO, Richard Rauch).

Apcon's arguments find no support in the record. Apcon first suggests that Gigamon first raised the equivalence of ingress/egress ports to network/instrument ports at trial. Dkt. 321, at 7. Not so. Indeed, Gigamon's experts pointed to Apcon's ingress/egress functionality as evidence of Apcon's infringement of the Port Patents in the reports they submitted over ***seven months*** before trial. Exs. 18-19.

Apcon then contends that Gigamon's technical experts "repeatedly testified at trial" that Apcon's products had ports that "were both a 'network port' and an 'instrument port' at the same time." Dkt. 321, at 5. Also untrue. Consistent with Gigamon's unchanged, overarching infringement theory, Gigamon's experts also looked ***past*** Apcon's label-centric port nomenclature. Specifically, in their reports (Ex. 18, at ¶¶ 160, 163, 164, 167-170; Ex. 19, at F-1-20 – F-1-36, F-1-59 – F-1-78), during their depositions (Ex. 20, at 103:9-23; Ex. 21, at 50:6-51:8), and at trial (Ex. 16 [Trial. Tr., at 434:23–435:06; 566:18–567:17]), Gigamon's experts identified the software-driven ***configurations*** that allow Apcon's ports to only receive packets from a network or only send packets to instruments. In other words, they ***repeatedly*** explained that those configurations exist on the ports, ***but only one of those configurations can be active at any one time***, thus satisfying the Court's claim construction. *E.g.*, Dkt. 320, at 10.

Finally, Apcon posits that ***if*** Gigamon contended "Apcon's ports could be connected to a network or instrument," that too would be inconsistent with the Court's claim construction. Dkt. 321, at 6. But—as Apcon concedes by arguing in the hypothetical—Gigamon never contended

that Apcon infringes because its products are merely capable of practicing the Port Patents. Rather, Gigamon pointed to the functionality of Apcon's products and compared them to the claims of the Port Patents, as it was required to do. *See, e.g.*, Dkt. 320 at 6-8, 11-14 (collecting trial testimony and presentation concerning Apcon's infringement of the Port Patents). The record—not Apcon's hypotheticals—determines whether this is an exceptional case.

In sum, Gigamon applied the Court's claim construction and demonstrated that Apcon infringes the Port Patents under that construction. Apcon's distortion of those constructions and/or Gigamon's infringement theory do not justify a fee award.

**3. All Of Gigamon's Asserted Patents Survived Summary Judgment**

Apcon did not challenge any Port Patent (or indeed any issue that would dispose of any Patent-in-Suit) before trial. The absence of any such challenge weighs heavily against shifting fees. *E.g.*, *Checkpoint Sys., Inc.*, 858 F.3d at 1376 (reversing a district court's fee award in part based on the fact that the accused infringer did not challenge the patents-in-suit at summary judgment); *Stragent*, 2014 WL 6756304, at *5 ("There is little injustice in forcing [the accused infringer] to bear its own attorney's fees for defending a claim it did not challenge on summary judgment."). And Apcon points to no similar circumstance where a case was found to be exceptional when a party did not mount any presuit challenge to the patents-in-suit.

**4. The Court's Rulings Throughout This Litigation Demonstrate Gigamon's Infringement Claims Had Merit**

Two months before trial, in disposing of Apcon's tortious interference counterclaim, the Court rejected Apcon's claim that Gigamon's lawsuit was objectively baseless. Dkt. 254, at 1-2; Ex. 14 [02/22/2021 Pretrial Hearing Tr., at 50:10-51:14] ("I don't find that anything Apcon has raised rises to the level of a material question as to whether or not the [lawsuit] is objectively baseless… The fact that a suit was filed, the fact that parties were in negotiations, all the allegations

in this briefing doesn't get us to a material question of fact about whether there is an objectively baseless act that could give rise to… bad faith."). That finding—made after the close of discovery and on the eve of trial—heavily weighs against an exceptional case finding after trial.

The Court's rulings during trial also undercut Apcon's suggestion that a finding of noninfringement was a foregone conclusion. On the third day of trial, the parties raised a dispute as to the meaning of the Court's construction of the Port Terms. Ex. 16 [Trial Tr. at 574:573:25-578:12]. At that time, the Court determined that the parties' infringement arguments were "a clear example of a battle of the experts" and that "the proper course at this juncture is for us to go forward." *Id.* at 578:13-579:3. The Court also denied Apcon's motion for judgment as a matter of law of no infringement. *Id.* at 1212:15-19. Those rulings demonstrate that Gigamon's infringement allegations were not "baseless" as Apcon argues in its brief—if they were, the case would have never reached the jury. *Checkpoint Sys., Inc.*, 858 F.3d at 1376 ("[A] party is entitled to rely on a court's denial of summary judgment and JMOL… as an indication that the party's claims were objectively reasonable and suitable for resolution at trial." (internal quotations and citations omitted)).

**5. The Precedent Apcon Cites Does Not Compel A Different Result**

Apcon cites cases that arise out of a much different context: where the defendant prevailed at summary judgment on the patent infringement allegations, lacking sufficient evidence to go to trial. None resemble the circumstances here.

In *Innovation Sciences v. Amazon.com*, the Federal Circuit upheld a fees award where the plaintiff asserted claims that were woefully deficient and frivolous. 842 F. App'x 555, 557 (Fed. Cir. 2021). Similarly, *MarcTec, LLC v. Johnson & Johnson*, which was decided at summary judgment, involved an assertion where the district court "made sufficient factual findings to support the conclusion that [the patentee] filed an objectively baseless lawsuit in bad faith."

*MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 917-18 (Fed. Cir. 2012). That is not the case here, as the Court confirmed at the pretrial conference. *See* Ex. 14. Both *Taurus IP, LLC v. DaimlerChrysler* (726 F.3d 1306, 1328 (Fed. Cir. 2013)) and *Sorkin v. Universal Building Products* (No. 08-CV-133-RC, 2010 WL 519742, at *4 (E.D. Tex. Feb. 9, 2010)) were resolved at the summary judgment stage and involved obviously frivolous assertions, which simply do not apply to a case that reached a trial on the merits and was untouched by any summary judgment rulings.

**B. Gigamon Reasonably And Diligently Litigated This Case**

During the pendency of this lawsuit, Gigamon narrowed its claims when feasible and appropriate, in accordance with the Court's orders and the parties' agreements. Gigamon's motion practice was sound and its motivations were proper. Gigamon's conduct does not make this an exceptional case.

**1. Gigamon Narrowed Its Claims In Good Faith At Appropriate Junctures In The Case**

Apcon contends that Gigamon "strategic[ally] delay[ed]" in narrowing the number of asserted patent claims. Dkt. 321, at 9. That is incorrect. The parties' correspondence, the timing of the major case events, and the Court's Orders ***all*** demonstrate that Gigamon narrowed its case when feasible and appropriate. Gigamon followed the Court's orders and reasonably narrowed the number of claims as the case progressed. That does not warrant fee shifting.

Moreover, Gigamon repeatedly engaged Apcon regarding a staged narrowing of the case. Exs. 1-5, 7-8. But Apcon was not interested, and, at one point, forced Gigamon to compel Apcon to provide basic discovery. Dkt. 45. The Court granted Gigamon's motion and further found that Gigamon was not required to narrow its asserted claims at that time. Yet, Gigamon reiterated its willingness to work with Apcon to further narrow the issues in this litigation. Exs. 9-11.

In the ensuing months, Gigamon reasonably narrowed its case in keeping with major benchmarks in the litigation and the parties' agreements, not because of a nefarious desire to expend Apcon's resources. The cases Apcon cites are not on point. *Core Wireless Licensing S.A.R.L. v. LG Electronics* has no bearing on the propriety of a party's decision to withdraw claims. No. 2:14-CV-0911-JRG-RSP, 2016 WL 1105364, at *2 (E.D. Tex. Feb. 4, 2016). *Cosmo Technologies v. Actavis Laboratories* is similarly unavailing. There, following a bench trial, the Court upheld a fees award because plaintiff dropped two patents two days before trial which was "unreasonable, prejudicial [], and reflective of the substantive weakness of Plaintiffs' case." No. 15-CV-164-LPS, 2019 WL 1417459, at *3 (D. Del. Mar. 28, 2019). There are no similar circumstances where, as here, a party's compliance with the local rule, the Court orders, and the parties' agreements justified fee shifting.

### 2. Gigamon Filed A Trial Motion In Good Faith And For Legitimate Reasons

Apcon argues that this ***entire case*** is exceptional because Gigamon filed a trial motion for curative relief following opening statements. Dkt. 321, at 10; *see* Dkt. 287. But even if unsuccessful, a legitimate motion does not make this case "rare and unusual" such that a fees award is appropriate, and the fact that the motion was unsuccessful is of no moment. *Stragent, LLC*, 2014 WL 6756304, at *3-4.

Gigamon brought its trial motion for legitimate reasons and in good faith. As to the merits of the motion,[6] Gigamon's objections to Apcon's Opening Statement were well founded. Apcon, for example, claimed—without any evidence—that a New York-based hedge fund and an unknown financial authority were pulling the strings in the shadows and using the case to

[6] The Court denied the Motion on the basis of waiver and did not address the merits of the Motion. Ex. 16 [Trial Tr., at 191:8–13].

improperly shake Apcon down for money. *See* Dkt. 320, at 25-29 (Gigamon's May 24, 2021 motion for judgment as a matter of law and a new trial). Gigamon raised the same issues at the pretrial conference and during the parties' meet and confer regarding Apcon's Opening Statement demonstratives. Thus, Gigamon was surprised (to put it mildly) when Apcon failed to follow the Court's rulings and guidance.

And, as to the timing of the trial motion, Gigamon wanted to be certain that Apcon's misconduct warranted action before lodging its objection. Dkt. 287. Gigamon is keenly aware that an opening statement objection is a serious matter and curative instructions can be severe. While the Court ultimately disagreed with that approach, Gigamon acted in good faith out of respect for the Court, proper decorum, and counsel for Apcon.

*Xiaohua Huang v. Huawei Technologies*—the only case Apcon cites in support of its argument related to Gigamon's trial brief—is not instructive. There, despite warnings of the "consequences of vexatious litigation conduct," the plaintiff "bombarded" defendant with motions to increase attorneys' fees and encourage settlement. *Xiaohua Huang v. Huawei Techs. Co.*, No. 2:15-CV-1413-JRG-RSP, 2017 WL 1133201, at *3-4 (E.D. Tex. Mar. 27, 2017), *aff'd*, 735 F. App'x 715 (Fed. Cir. 2018). Apcon, in stark contrast, only points to a ***single*** motion that Gigamon filed in good faith and for legitimate reasons. The filing of one motion is not comparable to the plaintiff's "bombardment" and "vexatious conduct" in *Xiaohua Huang*. *See id.*

### 3. Gigamon Filed This Lawsuit Because It Believes Apcon Infringes Its Patents

Apcon's claim that Gigamon concluded Apcon does not infringe prior to filing this lawsuit is demonstrably false for two reasons. Dkt. 321, at 11. First, Apcon's conspiracy theory is contrary to the only direct evidence presented at trial by either party. Specifically, Paul Hooper, Gigamon's CEO since 2012, testified at trial as to the timeline of Gigamon's pre-suit investigation into

Apcon's products and when Gigamon arrived at its belief that Apcon infringes the Patents-in-Suit. Ex. 16 [Trial Tr., at 287:3-288:11]. Second, the documents Apcon cites (Dkt. 321, at 11) ***have nothing to do with the Patents-in-Suit***. They are Gigamon marketing documents that juxtapose Apcon's products with functionality in ***Gigamon's products***. As the Court cautioned the parties at the Pretrial Hearing, the "only proper comparison for purposes of infringement are the ***accused products to the language of the claims***." Ex. 14 at 143:23-25 (emphasis added). As such, the documents say nothing about Gigamon's patents—let alone the claim language by which infringement is determined—and have no bearing on the issue of infringement. *ICU Medical v. Alaris Medical Systems* (558 F.3d 1368, 1380 (Fed. Cir. 2009)) does not compel a different result. There, the Federal Circuit upheld a fees award (following summary judgment, not a merits trial) because, among other sanctionable behavior, the patentee's document production revealed that it compared its ***patent claims to the accused infringer's products*** and determined that they would not cover those products. *Id.* No such comparison ever occurred here.[7]

Finally, Apcon seeks to resurrect its since-dismissed tortious interference argument regarding Gigamon's ostensibly improper motivation for filing suit. But "[e]nforcement of [patent rights] is not an 'exceptional case' under the patent law." *Checkpoint Sys., Inc.*, 858 F.3d at 1375 ("[M]otivation to implement the statutory patent right by bringing suit based on a reasonable belief in infringement is not an improper motive."). And in disposing of Apcon's tortious interference counterclaim, the Court expressly held that Gigamon's lawsuit was not "objectively baseless." Dkt. 254, at 1-2; Ex. 14 at 50:10-51:14. There is no basis to shift fees.

[7] Nor could they involve a patent claim-to-accused product comparison. The documents Apcon cites in its motion predate the issuance of all but the '862 patent, which was issued October 29, 2013.

## V. APCON'S MOTION IS UNTIMELY

On April 26, 2021, the Court signed a Final Judgment, ordering that "[a]ll other requests for relief regarding the above-captioned case, ***including but not limited to Motions pursuant to 35 U.S.C. § 285***, shall be filed within 28 days of this Judgment." Dkt. 306. The Court told the parties that "[t]he operative date is the date that Judge Gilstrap signed the judgment — in this case, April 26, 2021." Ex. 22 [May 21, 2021 Matalon Email to Davis]. That made all post-trial motions—including Apcon's Motion—due on May 24, 2021. Following the Court's instruction, Gigamon filed its post-trial motions on that date.

Apcon, however, did not file its Motion until May 26, 2021. It gives no explanation for its untimeliness, even though Gigamon expressly raised this issue with Apcon. Apcon attempts to justify that its filing is not tardy by citing cases that address the time for filing an appeal (Dkt. 321, at 3 n.2), but not to the circumstances here, where the Court specifically gave the parties direction regarding the timing of any post-trial motions. That is yet another reason to deny fees.

## VI. CONCLUSION

For the foregoing reasons, Apcon should be awarded none of its fees, and Gigamon reserves the right to move under § 285 if it becomes the prevailing party.

Dated: June 10, 2021

Respectfully submitted,

By: /s/*William E. Davis, III*
William E. Davis, III
(TX Bar No. 24047416)
Christian Hurt
(TX Bar No. 24059987)
**Davis Firm P.C.**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661
bdavis@davisfirm.com
churt@davisfirm.com

Jonas R. McDavit (*pro hac vice*)
Cosmin Maier (*pro hac vice*)
Steven M. Balcof (*pro hac vice*)
Elizabeth Weyl (*pro hac vice*)
Francesco D. Silletta (*pro hac vice*)
Joze F. Welsh (*pro hac vice*)
Amy I. Wann (*pro hac vice*)
**Desmarais LLP**
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
Email: jmcdavit@desmaraisllp.com
Email: cmaier@desmaraisllp.com
Email: sbalcof@desmaraisllp.com
Email: eweyl@desmaraisllp.com
Email: fsilletta@desmaraisllp.com
Email: jwelsh@desmaraisllp.com
Email: awann@desmaraisllp.com

Emily H. Chen (CA 302966)
**DESMARAIS LLP**
101 California Street
San Francisco, California 94111
Telephone: (415) 573-1806
Facsimile: (415) 573-1901
Email: echen@desmaraisllp.com

***Counsel for Plaintiff Gigamon Inc.***

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been served on all counsel of record this 10th day of June, 2021, via the Court's electronic filing system.

/s/ *William E. Davis, III*
William E. Davis, III

