IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| GIGAMON INC., § § § *Plaintiff,* § § v. § CIVIL ACTION NO. 2:19-CV-00300-JRG § APCON, INC., § § § *Defendant.* § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Apcon, Inc.'s ("Apcon") Motion for Attorneys' Fees Pursuant to 35 U.S.C. § 285 (the "Motion") (Dkt. No. 321). Having considered the Motion and the subsequent briefing, and for the reasons set forth herein, the Motion is **DENIED**.

### I. BACKGROUND

Plaintiff Gigamon Inc. ("Plaintiff" or "Gigamon") filed suit against Defendant Apcon, Inc. ("Defendant" or "Apcon"), alleging that Apcon's Series 3000 and Series 4000 products (the "Accused Products") infringe U.S. Patent Nos. 8,570,862 ("the '862 Patent"); 8,824,466 ("the '466 Patent"); 8,873,557 ("the '557 Patent"); 9,077,656 ("the '656 Patent"); and 9,769,049 ("the '049 Patent") (collectively, the "Asserted Patents"). (Dkt. No. 1). A jury trial was held beginning on April 16, 2021. (Dkt. No. 286). Gigamon asserted six claims across the five Asserted Patents: claims 1 and 8 of the '862 Patent; claim 12 of the '466 Patent; claim 10 of the '557 Patent; claim 14 of the '656 Patent; and claim 16 of the '049 Patent (collectively, the "Asserted Claims"). (Dkt. No. 296). The jury returned a verdict of no infringement and invalidity with respect to all Asserted Claims (*see id.*), and the Court subsequently entered Final Judgment. (Dkt. No. 306).

## II. LEGAL STANDARD

In "exceptional cases," a district court "may award reasonable attorney fees to the prevailing party" pursuant to 35 U.S.C. § 285. An "exceptional case" is "simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); *see also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014) (noting that "the word 'exceptional' in § 285 should be interpreted in accordance with its ordinary meaning" (citing *Octane Fitness*, 134 S. Ct. at 1755)). Notably, it is not necessary that the litigation conduct at issue be independently sanctionable, e.g., because it involves bad faith or some other misconduct. *See id.* at 1756–57 (holding that "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees").

The Supreme Court has been clear that district courts must determine whether any particular case is "exceptional" in a "case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756. Whether a case is "exceptional" or not "is a factual determination," *Forcillo v. Lemond Fitness, Inc.*, 168 F. App'x 429, 430 (Fed. Cir. 2006), and the court must make its discretionary determination by a "preponderance of the evidence." *Octane Fitness*, 134 S. Ct. at 1758 (rejecting the prior requirement that a patent litigant establish its entitlement to fees under § 285 by "clear and convincing" evidence). A district court's determination of whether a case is "exceptional" under § 285 is reviewed for an abuse of discretion. *See Highmark Inc.*, 134 S. Ct. at 1748; *see also Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1374 (Fed. Cir. 2017) ("On appeal, all aspects of a district court's § 285 determination are reviewed for an abuse of discretion." (citation omitted)).

In assessing the "totality of the circumstances," courts may consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S. Ct. at 1756 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.9 (1994) (addressing a similar fee-shifting provision in the Copyright Act)). Although a party's conduct need not be independently sanctionable to warrant an award of fees under § 285, (*id.* at 1756–57), fee awards should not be used "as a penalty for failure to win a patent infringement suit." *See id.* at 1753 (quotation omitted); *see also Checkpoint Sys., Inc.*, 858 F.3d at 1376.

Although an exceptional case finding is no longer constrained to "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement," *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002), "the absence of such conduct also weighs against an award" of fees under § 285. *AstraZeneca AB v. Aurobindo Pharma Ltd.*, 232 F. Supp. 3d 636, 649 (D. Del. 2017).

### III.   DISCUSSION

Apcon moves for fees on two grounds. First, Apcon argues that Gigamon continued to assert an infringement theory that the Court rejected during claim construction. (Dkt. No. 321 at 7). Second, Apcon contends that Gigamon litigated this case in an unreasonable manner by 1) asserting a large number of claims throughout discovery; 2) bringing an untimely motion for curative instructions during trial; and 3) bringing this lawsuit to disrupt Apcon's business and curtail its efforts to sell the company. (*Id*. at 12–17). The Court addresses each argument in turn.

#### A.   Claim Construction

Apcon argues that Gigamon's infringement theory was objectively unreasonable at least after the Court issued its *Markman* Order. (Dkt. No. 321 at 7). During claim construction with

respect to the '862, '466, '656, and '049 Patents (the "Port Patents"), the Court construed "network port" to mean "a port configured to be connected to a network (and not configured to be connected to an instrument)," while "instrument port" was construed to mean "a port configured to be connected to an instrument (and not configured to be connected to a network)." (Dkt. No. 114 at 23). Gigamon offered that no construction was necessary, and alternatively proposed "a port capable of being connected to" a network or instrument. In its analysis, the Court stated that "a single port cannot be both a 'network port' and an 'instrument port' at the same time." (*Id*. at 20). Thus, the Court found, "a port configured to be connected to a network is not at the same time configured to be connected to an instrument, and a port configured to be connected to an instrument is not at the same time configured to be connected to a network." (*Id*.). The Court rejected Gigamon's "capability" construction as "overbroad," finding the claims "requir[e] actual configuration, not mere capability." (*Id*. at 23). The Court also rejected Apcon's position that a "network port" or "instrument port" must be "specifically designated." (*Id*. at 21).

Apcon argues that before the *Markman* Order was issued, Gigamon "accused every port on Apcon's devices of being both a 'network port' and an 'instrument port' at the same time." (Dkt. No. 321 at 9). Apcon contends that rather than assessing its infringement claims in light of an adverse claim construction, "Gigamon did not once seek to amend its contentions and instead pressed forward with the same untenable theory." (*Id*. at 9). Apcon argues that Gigamon continued to contradict the Court's claim construction, including at trial, by allowing its experts to testify that Apcon's ports satisfied the claim limitations because they were "both a 'network port' and an 'instrument port' at the same time." (*Id*. at 9–10) (citing testimony of Gigamon's experts, Dr. Almeroth and Dr. Jeffay).

4

Apcon further argues that Gigamon defied the Court's rejection during claim construction of a "capability" standard for the "network port" and "instrument port" terms by asserting infringement based on software configurations that exist in the Accused Products, independent of any later configurations by a user. (*Id*. at 10). According to Apcon, Gigamon asserted that "ingress" and "egress" ports in the Accused Products could satisfy either of the "network port" or "instrument port" limitations, and a user did not need to take any "actions to demonstrate configuration of a port as a 'network port' or 'instrument port.'" (*Id*. at 12).

Gigamon responds that it "hewed to the Court's construction[s]" of "network port" and "instrument port" at trial, and Apcon never moved for summary judgment, filed a motion to strike, or even notified Gigamon that it should withdraw its assertion of the Port Patents. (Dkt. No. 324 at 7). Gigamon also notes that the Court denied Apcon's Rule 50(a) motions that Apcon could not infringe the Port Patents as a matter of law under the Court's claim constructions. (*Id*.). Gigamon further argues that rather than asserting an accused port could be a "network port" and an "instrument port" at the same time, its experts "identified software-driven configurations that allow Apcon's ports to only receive packets from a network or only send packets to instruments." (*Id*. at 11). With respect to "capability" versus "configuration," Gigamon argues that it "never contended that Apcon infringes because its products are merely capable of practicing" the Port Patents, but instead simply compared the accused functionality to the claims. (*Id*. at 11–12).

The Court finds that Gigamon's continued assertion of infringement in view of the Court's claim constructions was not unreasonable. Although Apcon attempts to frame the issue otherwise, the Court rejected both parties' proposed constructions of "network port" and "instrument port." (*See* Dkt. No. 114 at 15–23; Dkt. No. 212 at 1). Accordingly, each party accuses the other of violating the Court's claim constructions with respect to these terms—including the Court's

5

accompanying analysis set forth in the *Markman* Order. (*Compare* Dkt. No. 320, Gigamon's Combined Motions for Judgment as a Matter of Law and Motions for a New Trial, *with* Dkt. No. 321, Apcon's Motion). As the Court stated at trial, the dispute between the parties with respect to whether the ingress and egress ports satisfied the "network port" and "instrument port" limitations, as properly construed, presented a "battle of the experts." (Dkt. No. 300 at 74:13–14). Accordingly, neither side's position was so unreasonable as to warrant a finding of exceptionality.

### B. Gigamon's Litigation Conduct

Apcon next argues that Gigamon engaged in unreasonable litigation tactics in three ways. First, Apcon contends that Gigamon asserted a large number of claims throughout the case, only to substantially narrow its case just before key deadlines and force Apcon to expend unnecessary resources. (Dkt. No. 321 at 12–13). For support, Apcon points to Gigamon's decisions to 1) narrow from 212 claims to 65 claims before the claim construction hearing; 2) narrow from 44 to 21 claims five days before the deadline for opening expert reports; 3) withdraw an asserted patent approximately six months after the close of expert discovery; and 4) narrow from 8 claims to 6 four days before jury selection. (*Id*. at 13).

Second, Apcon argues that Gigamon unreasonably attempted to re-litigate at trial issues that had already been decided by the Court. Two days after opening statements, Gigamon filed a Motion for Curative Relief regarding four discrete objections to Apcon's opening statement. (Dkt. No. 287). Gigamon, however, failed to object during or immediately after the opening statement, and the Court found Gigamon's later objections untimely on that basis. (*See* Dkt. No. 299 at 3:13–4:14).

Third, Apcon argues that despite studying Apcon's products for years and determining Apcon did not infringe, Gigamon brought this lawsuit to disrupt Apcon's business relations and scare off investors considering purchasing Apcon. (Dkt. No. 321 at 15). Apcon identifies an

6

internal November 2013 email and July 2014 presentation where Gigamon allegedly admitted that Apcon's products do not practice the claimed features of the Asserted Patents. (*Id*. at 15). Apcon argues that Gigamon filed this action anyway, in large part to thwart a sale of Apcon to a third party. (*Id*. at 16).

Gigamon responds that it narrowed its case at appropriate junctures in good faith. Gigamon contends that its decisions to narrow were compliant with the Local Rules, the Court's orders, and the parties' agreements. (*Id*. at 14–15). As to the filing of its trial motion for curative relief, Gigamon argues that it brought the motion in good faith and for legitimate reasons. (*Id*. at 15). That the motion was unsuccessful, Gigamon contends, does not demonstrate this case is "rare and unusual." (*Id*.). Finally, Gigamon submits that it filed this lawsuit because it believes Apcon infringes its patents, not to interfere with Apcon's business relations. (*Id*. at 16–17). Gigamon contends that its CEO, Paul Hooper, testified at trial that the pre-suit investigation into Apcon's products revealed that Gigamon believed Apcon was infringing its patents. (*Id*.). Gigamon further argues that Apcon seeks to improperly resurrect its prior tortious interference counterclaim "regarding Gigamon's ostensibly improper motivation for filing suit." (*Id*. at 17). According to Gigamon, none of these grounds provide a basis to shift fees. (*Id*. at 18).[1]

The Court is not persuaded that the challenged conduct rises to the level of unreasonable litigation behavior by Gigamon. The development, refining, and narrowing of a case as it proceeds to trial is never a perfect process. The Court finds that Gigamon, through its narrowing of claims and filing of its trial motion for curative relief, did not engage in unreasonable or vexatious litigation tactics. Nor has Apcon shown that Gigamon previously determined that Apcon was not

---

[1] Gigamon further argues that Apcon's Motion is untimely as it was filed more than 28 days after the Court entered Final Judgment. (Dkt. No. 324 at 18). Since the Court denies the Motion on other grounds, the Court does not address Gigamon's waiver argument.

infringing but brought this lawsuit anyway, or that Gigamon brought the lawsuit merely as a ploy to impede Apcon's business opportunities.

## IV.     CONCLUSION

For the reasons set forth above, the Court finds that this is not an exceptional case, and Apcon's Motion (Dkt. No. 321) is **DENIED**.

**So ORDERED and SIGNED this 29th day of March, 2022.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

8